360 So.2d 166 (1978)
STATE of Louisiana
v.
Roderick G. WILSON.
No. 61315.
Supreme Court of Louisiana.
June 19, 1978.
*167 William J. O'Hara, III, Supervising Atty., New Orleans, Kim Allison Gandy, Mary Jana Bain, Student Practitioners Loyola Law School Clinic, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Nick F. Noriea, Jr., Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Roderick G. Wilson was charged in the same information with two separate counts of armed robbery in violation of La.R.S. 14:64. After trial by jury, he was found guilty as charged on both counts. Separate sentences were imposed by the court on defendant for each conviction. Subsequently, the district attorney filed an information accusing defendant of a previous felony conviction under La.R.S. 15:529.1 (Habitual Offender Law). After hearing, the trial judge found defendant to be an habitual offender, vacated the previously imposed sentences, and sentenced him on each count to serve thirty-five years at hard labor without benefit of parole, probation or suspension of sentence. The court expressly directed the sentences to be served concurrently. Defendant was given credit toward service of his sentences for time spent in actual custody prior to imposition of sentences. On appeal, defendant relies on eleven assignments of error for reversal of his convictions and sentences.[1]
*168 ASSIGNMENTS OF ERROR NOS. 1 AND 2
Defendant contends the trial judge erred in denying him the right to impeach his own witness. He argues that he was taken by surprise in that the witness' testimony at trial was contrary to prior statements made by him to two other defense witnesses.
Elvis Bassrone was called as a defense witness. He was questioned as to whether he had ever stated to Darryl Lewis and defendant's mother that he knew who had participated in the crimes charged and that defendant was not one of the participants. Bassrone responded in the negative. He likewise denied any participation on his part in the crimes. Thereafter, Darryl Lewis, defendant's first cousin, was called by the defense and was asked whether Bassrone had ever related to him the details of the robberies. Thereupon, the trial judge interjected that the defense could not impeach its own witness absent a showing of surprise or hostility. However, the trial judge permitted defense counsel to recall Bassrone to the stand so that an adequate foundation for the plea of surprise could be laid. Again, Bassrone denied that he had ever told Lewis or defendant's mother that he knew who had committed the crimes charged. Upon questioning by the court, the witness also denied that he had ever made a statement to defense counsel that he knew who the participants in the crimes were. Outside of the presence of the jury, a colloquy occurred between the court and counsel which revealed that defense counsel had not personally verified the witness' testimony prior to trial but rather had received information from Lewis and defendant's mother that Bassrone had made such statements. The trial judge ruled that the showing of surprise was inadequate and, therefore, defense counsel would not be permitted to impeach his own witness. Subsequently, Lewis and Mabel Wilson, defendant's mother, testified at length that Bassrone had stated to them that he along with two other individuals had planned and committed the crimes and that defendant was not one of the participants.
Impeachment of one's own witness is allowed under the following provision of La. R.S. 15:487:
No one can impeach his own witness, unless he have (sic) been taken by surprise by the testimony of such witness, or unless the witness show (sic) hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.
The meaning of "surprise" is set out in La.R.S. 15:488, as follows:
'Surprise' in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side.
Under the circumstances here presented, the defense could not anticipate what the witness' testimony would be at trial and, therefore, could not claim to have been surprised by his testimony. State v. Browning, 290 So.2d 322 (La.1974); State v. Bodoin, 153 La. 641, 96 So. 501 (1923). Hence, the trial judge did not err in ruling that the showing of surprise was inadequate.
However, assuming arguendo that the showing of surprise was adequate and the trial judge erred in not permitting defense counsel to impeach the witness, the error was harmless as any prejudice resulting therefrom was counteracted or removed by later testimony. Had defendant been permitted to impeach Bassrone, at most he would have been able to place Bassrone's prior contradictory statements before the jury. The subsequent testimony of Lewis and Mrs. Wilson established the content of these statements. Since the ultimate purpose of impeaching Bassrone was to place before the jury the fact that he had stated that defendant was not involved in the crimes, it was in fact accomplished by this later testimony. Hence, any prejudice resulting from the ruling of the trial judge was removed by the subsequent testimony of Lewis and Mrs. Wilson. State v. Clark, 325 So.2d 802 (La.1976).
*169 Assignments of Error Nos. 1 and 2 are without merit.
ASSIGNMENTS OF ERROR NOS. 4 AND 5
Defendant contends the trial judge erred in permitting Lucille Stewart to testify on rebuttal on behalf of the state in that the witness had violated the order of sequestration. He further argues that the trial judge erred in refusing to instruct the jury that the witness had violated the order of sequestration.
At the beginning of trial, the trial judge ordered the witnesses sequestered. During its case in chief, the state called to the stand Miss Stewart who was employed at a residence near where defendant and his family lived. She testified that Mabel Wilson, defendant's mother, had related to her that, although she had instructed defendant to go downtown on the morning when the crimes were committed to pay her utility bill, he had not done so. Subsequently, Mrs. Wilson testified on behalf of the defendant that on the morning when the crimes were committed she sent defendant downtown to pay her utility bill and defendant did in fact pay the bill. The witness denied that she had ever made a statement to the contrary to Miss Stewart. At the close of defendant's case, the state recalled Miss Stewart to the stand to rebut Mrs. Wilson's testimony. Defendant objected to the witness' rebuttal testimony on the ground that the witness had been present in the courtroom during a portion of the trial in violation of the order of sequestration. Outside of the presence of the jury, the prosecutor stated that the witness had been released from her subpoena after testifying but had apparently remained in the courtroom. However, she had been removed from the courtroom when Mrs. Wilson was called to testify on behalf of the defense and, therefore, she had not heard the testimony which she was being called to rebut. The trial judge indicated that he had personally observed the removal of the witness from the courtroom prior to the commencement of Mrs. Wilson's testimony. Therefore, the trial judge ruled that Miss Stewart would be permitted to testify on rebuttal in spite of her violation of the order of sequestration. Thereafter, defendant requested that the trial judge instruct the jury that the witness had violated the order of sequestration which request was denied. Miss Stewart then testified that, on the day after the crimes were committed, Mrs. Wilson told her that defendant had not paid her utility bill on the previous morning.
The rule providing for sequestration of witnesses is contained in La.Code Crim.P. art. 764 which provides:
Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
The purpose of this article requiring sequestration of witnesses is to prevent their being influenced by testimony of prior witnesses and to strengthen the role of crossexamination in developing the facts. State v. Mullins, 353 So.2d 243 (La.1977); State v. Bell, 346 So.2d 1090 (La.1977); State v. Ardoin, 340 So.2d 1362 (La.1976); State v. Batts, 324 So.2d 415 (La.1975); State v. Raymond, 258 La. 1, 245 So.2d 335 (1971). This provision vests discretion in the trial judge as to the disqualification of a witness when the rule of sequestration has been violated. State v. Mullins, supra; State v. Calloway, 343 So.2d 694 (La.1976); State v. Ardoin, supra; State v. Baker, 338 So.2d 1372 (La.1976); State v. Badon, 338 So.2d 665 (La.1976); State v. Batts, supra; State v. McKinney, 302 So.2d 917 (La.1974). The trial judge's ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. State v. Mullins, supra; State v. Calloway, supra.
In the instant case, the testimony of the witness was offered to rebut the testimony *170 of defendant's mother that when the offenses were committed defendant had gone downtown to pay her utility bill and, therefore, could not have participated in the commission of the crimes. Miss Stewart had been removed from the courtroom before Mrs. Wilson testified at trial and, hence, her rebuttal testimony was in no way influenced by the testimony of Mrs. Wilson. Under these circumstances, defendant was not prejudiced by the violation of the order of sequestration. Hence, the trial judge did not abuse his discretion in permitting the witness to testify on rebuttal. Moreover, having determined that Miss Stewart was qualified to give rebuttal testimony in spite of the violation of the order of sequestration, the trial judge was not required to instruct the jury that the witness had violated the order of sequestration. Accordingly, he did not err in declining to do so.
Assignments of Error Nos. 4 and 5 are without merit.
ASSIGNMENTS OF ERROR NOS. 9, 10 and 11
In Assignments of Error Nos. 9 and 10, defendant contends the trial judge erred in denying his motions for speedy sentencing under the Habitual Offender Law (La.R.S. 15:529.1) and to quash the information which charged him with a previous felony conviction in which he alleged that the state acted unreasonably and in bad faith in failing to charge him as an habitual offender prior to September 9, 1977. He argues that, by deferring prosecution under La. R.S. 15:529.1 until after September 9, 1977, the state thereby deprived him of his right to a diminution of his sentences for good behavior under the provisions of La.R.S. 15:571.3, as amended by La. Acts 1977, No. 633, § 1. In Assignment of Error No. 11, defendant further contends that La.R.S. 15:571.3 as amended does not apply to the instant prosecution and, alternatively, if it does so apply, it is unconstitutional as an ex post facto law.
On August 18, 1977, defendant was found guilty of two counts of armed robbery. During the course of the trial, defendant took the stand and disclosed a prior felony conviction for possession of stolen property. On September 8, the date set for sentencing on the present convictions, defendant filed a motion for speedy sentencing under the Habitual Offender Law in which he requested that the trial judge order the state to file an information charging him as an habitual offender prior to September 9, 1977, so that the effect of an amendment to La.R.S. 15:571.3, effective September 9, 1977, could be avoided. The amendment provided, inter alia, that no inmate in the custody of the Louisiana Department of Corrections who has been convicted one or more times under the laws of this state of armed robbery and who has been sentenced as an habitual offender under the Habitual Offender Law after September 9, 1977, shall be entitled to a diminution of sentence for good behavior. The trial judge denied the motion and sentenced defendant on his armed robbery convictions. On September 20, 1977, the district attorney filed an information accusing defendant of a previous felony conviction under La.R.S. 15:529.1 (Habitual Offender Law). At the hearing on this matter conducted on October 5, defendant moved to quash the habitual offender information on the ground that the state had acted unreasonably and in bad faith in failing to charge him as an habitual offender prior to September 9, 1977, which failure resulted in his being deprived of his right to a diminution of his sentences for good behavior under the amended provisions of La.R.S. 15:571.3, effective September 9, 1977. The trial judge denied the motion. Thereafter, defendant was found to be an habitual offender under La.R.S. 15:529.1 and was sentenced accordingly.
In addressing the contentions asserted by defendant in these assignments of error, we must first determine whether the amended provisions of La.R.S. 15:571.3 are applicable to the instant case and, if so, whether the amended statute as applied to defendant is unconstitutional as an ex post facto law.
By La.Acts 1977, No. 633, § 1, effective September 9, 1977, La.R.S. 15:571.3 was amended to provide as follows:

. . . . .

*171 C. (1) No inmate in the custody of the Louisiana Department of Corrections who has been convicted one or more times under the laws of this state of first or second degree murder; manslaughter; aggravated battery; aggravated, forcible or simple rape; aggravated kidnapping; aggravated or simple burglary; armed or simple robbery; any violation of R.S. 14:67 which is a felony; any violation of R.S. 14:95, R.S. 14:95.1, or R.S. 40:1751, et seq. which is a felony; any violation of the Louisiana Uniform Controlled Dangerous Substances Law which is a felony; or any felony defined as an attempt to commit one of the aforementioned crimes and who has been sentenced as a habitual offender under the Habitual Offender Law as set forth in R.S. 15:529.1 prior to or on September 9, 1977, shall be entitled to diminution of sentence for good behavior under this Part, if so ordered by the sentencing court.
(2) No inmate in the custody of the Louisiana Department of Corrections who has been convicted one or more times under the laws of this state of first or second degree murder; manslaughter; aggravated battery; aggravated, forcible or simple rape; aggravated kidnapping; aggravated or simple burglary; armed or simple robbery; any violation of R.S. 14:67 which is a felony; any violation of R.S. 14:95, R.S. 14:95.1, or R.S. 40:1751, et seq. which is a felony; any violation of the Louisiana Uniform Controlled Dangerous Substances Law which is a felony; or any felony defined as an attempt to commit one of the aforementioned crimes and who has been sentenced as a habitual offender under the Habitual Offender Law as set forth in R.S. 15:529.1 after September 9, 1977 shall be entitled to a diminution of sentence for good behavior under this Part. (Emphasis added.)
The purpose of the amendment was to make mandatory, instead of discretionary with the sentencing court, the prohibition against diminution of sentence for good behavior with respect to inmates convicted of certain crimes and sentenced as habitual offenders after the effective date of the amendment. Construing La.R.S. 15:571.3 C(1) and (2) together, we conclude that, where a defendant has been convicted one or more times of the offenses enumerated therein, he is not entitled to a diminution of sentence for good behavior when he is sentenced as an habitual offender under the terms of La.R.S. 15:529.1 after September 9, 1977. To construe the statute otherwise would carve from the coverage of the statute the situation where a defendant has been convicted of one of the enumerated felonies prior to the effective date of the statutory amendment but is not sentenced as an habitual offender until after that date. Such was not the legislative intent. Under the statute, whether the sentencing of a defendant as an habitual offender occurs prior to or after September 9, 1977, determines whether the prohibition against diminution of sentence for good behavior is discretionary with the sentencing court under La.R.S. 15:571.3 C(1) or mandatory under La.R.S. 15:571.3 C(2). Applying this statutory interpretation to the instant case, since defendant was sentenced as an habitual offender subsequent to September 9, 1977, and was convicted one or more times of armed robbery, although such convictions preceded the effective date of the amendment to La.R.S. 15:571.3, he is not entitled to a diminution of his sentences for good behavior under La.R.S. 15:571.3 C(2).
Nor is the amendment to La.R.S. 15:571.3 unconstitutional as an ex post facto law. An ex post facto law is one which inflicts a greater punishment than the law annexed to the crime when committed. Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798). La.R.S. 15:571.3 C(2) does not inflict a greater punishment for the enumerated crimes than when they were committed but only makes mandatory the prohibition against diminution of sentence for good behavior with respect to inmates convicted of those crimes and sentenced as habitual offenders after the effective date of the amendment. The awarding of good time has never been a vested right to which inmates convicted of certain enumerated crimes and sentenced as habitual offenders *172 were entitled. Prior to the 1977 amendment to La.R.S. 15:571.3, the statute made discretionary with the sentencing court the determination of whether inmates convicted of the enumerated crimes and sentenced as habitual offenders would be entitled to diminution of sentence for good behavior. Furthermore, even if the sentencing court in the exercise of its discretion permitted the diminution of a defendant's sentence for good behavior, under La.R.S. 15:571.4 the awarding of good time was granted within the discretion of the director of corrections upon recommendation of the warden or superintendent of adult correctional institutions of the Department of Corrections based upon a thorough evaluation of an individual inmate's behavior, work performance and efforts toward self-improvement. Hence, prior to the amendment to La.R.S. 15:571.3, defendants convicted of the enumerated crimes and sentenced as habitual offenders possessed no vested right in having their sentences reduced for good behavior. The amendment to the statute which makes mandatory the prohibition against diminution of sentence with respect to that class of defendants, therefore, does not deprive those defendants of any vested right to good time. Since it does not deprive the class of defendants within its coverage of any vested right to good time, the statute as amended does not inflict a greater punishment for the enumerated offenses than when they were committed. Accordingly, it is not an ex post facto law.
Lastly, we reject defendant's contention that the trial judge erred in denying defendant's motions for speedy sentencing under the Habitual Offender Law and to quash the habitual offender information. This court has recognized that the enforcement of the Habitual Offender Law rests within the discretion of the district attorney. State v. Badon, 338 So.2d 665 (La.1976); State v. Overton, 337 So.2d 1201 (La.1976). However, the district attorney must file an habitual offender bill within a reasonable time after the prosecution knows that a defendant has a prior felony record. State v. Bell, 324 So.2d 451 (La.1975). Although La.R.S. 15:529.1 does not allow an indefinite time in which a district attorney may file an habitual offender bill once such information is available, neither does it impose a specific prescriptive period in which the district attorney must act upon the receipt of the necessary information. State v. McQueen, 308 So.2d 752 (La.1975). In the instant case, the district attorney filed an information accusing defendant of a previous felony conviction approximately one month after receipt of information that defendant had been previously convicted of a felony and after defendant's convictions for the instant offenses and approximately two weeks after defendant was sentenced on those convictions. Under these circumstances, we do not consider that the district attorney acted unreasonably in delaying the institution of the habitual offender proceeding even though such delay resulted in the mandatory prohibition against diminution of defendant's sentences for good behavior because of the amendment to La.R.S. 15:571.3 which went into effect in the interim.
Assignments of Error Nos. 9, 10 and 11 are without merit.

DECREE
For the reasons assigned, the convictions and sentences are affirmed.
SUMMERS, J. While I agree with the treatment of other assignments, I dissent from the treatment of assignments 9, 10, & 11.
DENNIS, J., concurs, but disagrees with the statement of law regarding the sequestration of witness issue in assignments 4 & 5. See State v. Jones, 354 So.2d 530 (La. 1978) and the interpretation of "surprise" in assignments 1 & 2.
CALOGERO, J., concurs in part and dissents in part and assigns reasons.
CALOGERO, Justice, concurring in part and dissenting in part.
I concur in the affirmance of defendant's conviction but would vacate his sentence for the following reasons.
*173 By formal stipulation at his sentencing on September 8, 1977 defendant admitted that he had a prior conviction and that if he were double billed he would plead guilty to the double bill. The district attorney had known of defendant's previous conviction at least since the date of trial, August 18, 1977. Furthermore, it is generally the practice in the Criminal District Court for the Parish of Orleans that the state files the habitual offender bill before a defendant is sentenced for the most recent crime for which he has been convicted. It is therefore hard for me to accept the state's position in brief that a delay past September 9th in filing its habitual offender bill "was both reasonable and necessary due to the time required by the State for preparing its case on the multiple bill." Absent any plausible reason, and there is none in this record, I can only conclude that the state in seeking to multiple bill defendant after September 9th was motivated by a desire to take advantage of the 1977 amendment to La.R.S. 15:571.3 which required that a person sentenced as a multiple offender after September 9, 1977 for committing certain enumerated crimes be entitled to no good time diminution.
Whatever discretion is otherwise afforded the state's attorney in various aspects of the administration of the criminal law, I am not of the view that under this statute it was intended that the district attorney be afforded the discretion of seeing to it that a person who normally would have been sentenced as a habitual offender before the effective date was actually sentenced as such after the statute took effect.
For these reasons I believe that the sentencing enhancement which results from the amended law should not attach to defendant's sentence as a habitual offender. I would affirm defendant's conviction but vacate his sentence and remand the case for resentencing with the direction that the sentence be imposed as if imposed on September 9, 1977, before the amendment to R.S. 15:571.3 became effective.
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 3, 6, 7 and 8. Hence, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La.1975).