367 So.2d 283 (1978)
STATE of Louisiana ex rel. Joseph BICKMAN
v.
Hayden J. DEES, Warden, Dixon Correctional Institute.
STATE of Louisiana ex rel. Kent BELL
v.
Hayden J. DEES, Warden, Dixon Correctional Institute.
STATE of Louisiana ex rel. Ray STEVENS
v.
Hayden J. DEES, Warden, Dixon Correctional Institute.
STATE of Louisiana ex rel. Glenn WADE
v.
Hayden J. DEES, Warden, Dixon Correctional Institute.
STATE of Louisiana ex rel. Keith CORNELL
v.
Hayden J. DEES, Warden, Dixon Correctional Institute.
STATE of Louisiana ex rel. David GIFFORD
v.
Hayden J. DEES, Warden, Dixon Correctional Institute.
STATE of Louisiana ex rel. Robert N. PAULHUS a/k/a Robert N. O'Brien
v.
CUSTODIAN OF RECORDS OF LOUISIANA STATE PENITENTIARY, C. Paul Phelps, Secretary, Department of Corrections, Frank Blackburn, Warden, Louisiana State Penitentiary. *284
STATE of Louisiana ex rel. Nelson MANUEL
v.
C. Paul PHELPS, Secretary, Department of Corrections.
STATE of Louisiana ex rel. Bruce HINKLEY
v.
C. Paul PHELPS, Secretary, Department of Corrections.
Nos. 62496, 62696, 62717, 62800, 62802, 62918, 62969, 63069 and 63072.
Supreme Court of Louisiana.
December 21, 1978.
*286 PER CURIAM.
Recently this Court in State v. Curtis, 363 So.2d 1375 (La.1978), overruling its earlier decision in State v. Wilson, 360 So.2d 166 (La.1978), held that the application of amended provisions of La.R.S. 15:571.3(C), relative to denial of eligibility for diminution of sentence for good behavior, to a defendant who committed the underlying offense prior to enactment of the statute, but who was sentenced thereafter, violates the ex post facto prohibitions contained in both the United States and Louisiana Constitutions. See U.S.Const. art. I, § 9; La. Const. art. I, § 23 (1974). While the change in the law does not deprive defendants of any vested rights, we concluded that it does operate to apply "a new punitive measure to a crime already consummated to the detriment or material disadvantage of the wrongdoer and that it has the effect of making the standard of punishment `more onerous' through its effect on release eligibility." State v. Curtis, supra (citations omitted).
These nine consolidated cases, before the Court on petitions for writs, all raise issues concerning the application of State v. Curtis, supra, and the effect of its holding on other statutory provisions relative to diminution of sentence for good behavior. Three distinct problems are presented: (1) a pure Curtis issue, i. e. denial of the opportunity to earn good time diminution under La.R.S. 15:571.3(B) by the operation of laws passed after the date the offense was committed; (2) the effect of Curtis on the operation of La.R.S. 15:571.4 relative to computation of good time to be applied toward diminution of sentence, as amended by Acts 1977, No. 665, § 1; and (3) the effect of Curtis on the application of various provisions relative to forfeiture of good time by parole violators, including particularly La. R.S. 15:571.4.
Eligibility for Diminution of Sentence for Good Behavior
La.R.S. 15:571.3(B) provides as follows:
Every inmate in the custody of the Department of Corrections who has been convicted of a felony and sentenced to imprisonment for a stated number of years or months may earn a diminution of sentence by good behavior and performance of work or self improvement activities or both to be known as "good time." Those inmates serving life sentences will be credited with good time earned which will be applied toward diminution of their sentences at such time as the life sentences might commuted to a specific number of years. The director of corrections shall establish procedures for awarding and recording of good time and shall determine when good time has been earned toward diminution of sentence. The amount of diminution of sentence allowed shall be otherwise provided by law.
This general provision authorizing the awarding of good time for all inmates in the custody of the Department of Corrections was last amended in 1972. Acts 1972, No. 739, § 1.[1]
In 1975, the legislature added a section C to La.R.S. 15:571.3 which stated as follows:
No inmate in the custody of the Louisiana Department of Corrections who has been convicted one or more times under the laws of this state of first or second degree murder, manslaughter, aggravated battery; aggravated, forcible or simple rape; aggravated kidnapping; aggravated *287 or simple burglary; armed or simple robbery; any violation of R.S. 14:67 which is a felony; any violation of R.S. 14:95, R.S. 14:95.1, or R.S. 40:1751 et seq. which is a felony; any violation of the Louisiana Uniform Controlled Dangerous Substances Law which is a felony; or any felony defined as an attempt to commit one of the aforementioned crimes and who has been sentenced as an habitual offender under the Habitual Offender Law as set forth in R.S. 15:529.1 shall be entitled to diminution of sentence for good behavior under this Part, if so ordered by the sentencing court.

Acts 1975, No. 727, § 1 (emphasis added). The provisions of the Act specifically stated that it applied "only to persons convicted under the Habitual Offender Law after September 15, 1975." Acts 1975, No. 727, § 3.
This added provision was amended in 1977 to provide as follows:
(1) No inmate in the custody of the Louisiana Department of Corrections who has been convicted one or more times under the laws of this state of first or second degree murder; manslaughter; aggravated battery; aggravated, forcible or simple rape; aggravated kidnapping; aggravated or simple burglary; armed or simple robbery; any violation of R.S. 14:67 which is a felony; any violation of R.S. 14:95, R.S. 14:95.1, or R.S. 40:1751, et seq. which is a felony; any violation of the Louisiana Uniform Controlled Dangerous Substances Law which is a felony; or any felony defined as an attempt to commit one of the aforementioned crimes and who has been sentenced as a habitual offender under the Habitual Offender Law as set forth in R.S. 15:529.1 prior to or on September 9, 1977, shall be entitled to diminution of sentence for good behavior under this Part, if so ordered by the sentencing court.

(2) No inmate in the custody of the Louisiana Department of Corrections who has been convicted one or more times under the laws of this state of first or second degree murder; manslaughter; aggravated battery; aggravated, forcible or simple rape; aggravated kidnapping; aggravated or simple burglary; armed or simple robbery; any violation of R.S. 14:67 which is a felony; any violation of R.S. 14:95, R.S. 14:95.1, or R.S. 40:1751, et seq. which is a felony; any violation of the Louisiana Uniform Controlled Dangerous Substances Law which is a felony; or any felony defined as an attempt to commit one of the aforementioned crimes and who has been sentenced as a habitual offender under the Habitual Offender Law as set forth in R.S. 15:529.1 after September 9, 1977 shall be entitled to a diminution of sentence for good behavior under this Part.

Acts 1977, No. 633, § 1 (emphasis added).
Under Curtis, the controlling date for the application of these statutory provisions can no longer be the date on which the defendant is sentenced as a habitual offender. Rather, reference must be made to the date the offense was committed in order to determine the constitutionally applicable provision relative to good time eligibility. An examination of the various legislative acts and their specified effective dates,[2] in *288 light of Curtis, establishes the following: (1) any person convicted of a felony committed on or prior to September 15, 1975, is eligible for diminution of sentence for good behavior regardless of the nature of his offense(s) and whether or not he has been adjudged a habitual offender; (2) any person who has committed a felony between September 16, 1975 and September 9, 1977 inclusive, has been convicted one or more times of one of the offenses enumerated in La.R.S. 15:571.3(C), and is sentenced as a habitual offender, is eligible for good time unless specifically denied such eligibility upon order of the sentencing court; and (3) any person who has committed a felony on September 10, 1977 or thereafter, has been convicted one or more times of one of the offenses enumerated in La.R.S. 15:571.3(C), and is sentenced as a habitual offender is automatically denied eligibility for diminution of sentence for good behavior.
Computation of Good Time
La.R.S. 15:571.4 sets forth procedures for the computation of good time to be applied toward diminution of sentence. In 1972, the section relative to inmates in the custody of the Department of Corrections was amended to provide, with respect to the basis for computation, that "[g]ood time for all sentences will be computed on the basis of 25 days per month for time actually served, which amount shall be applied toward diminution of sentence." La.R.S. 15:571.4(B), as amended by Acts 1972, No. 739, § 1 (emphasis added). Section 2 of the same Act stated with respect to applicability as follows:
The provisions of this Act shall be applicable to all inmates presently in the custody of the Department of Corrections. . . provided that those inmates presently serving longer sentences will not be credited with less good time than they might already have earned under the provisions of Act 426 of 1964.
The provisions of this Act shall also be applicable to all inmates hereafter sentenced to the Department of Corrections for any term longer than one month as imposed or to which sentence is computed.
Acts 1972, No. 739, § 2. La.R.S. 15:571.4(B) was again amended by Acts 1974, No. 200, § 1, but only relative to the effect of parole revocation on forfeiture of good time. See discussion infra.
In 1977, however, the legislature added a new section to La.R.S. 15:571.4 which provides that for inmates convicted subsequent to September 9, 1977 "[g]ood time for all sentences will be computed on the basis of fifteen days per month for time actually served, which amount shall be applied toward diminution of sentence." La.R.S. 15:571.4(C) as added by Acts 1977, No. 665, § 1 (emphasis added). The clear intent of this added provision is that the basis for computing good time for inmates convicted after September 9,1977 is to be fifteen (15) days per month rather than the twenty-five (25) days per month basis applicable to those convicted on or prior to September 9, 1977. The issue presented is whether the application of this 1977 amendment to persons who committed offenses on or prior to September 9, 1977, but who were convicted subsequent to September 9, 1977 violates the ex post facto prohibitions of the United States and Louisiana constitutions as interpreted in State v. Curtis, supra.
That the statute has been changed to some inmate's disadvantage after the commission of the offense is clear. Prior to 1977, eligible inmates, on recommendations based on a thorough evaluation of their behavior, work performance and efforts toward self-improvement, could receive a credit of good time of approximately forty-five percent, i. e. "twenty-five days per month for time actually served." Following the amendment, this provision allowing for a maximum diminution of sentence of approximately forty-five percent would still apply to inmates convicted on or before September 9, 1977. However, under the amendment as written, eligible inmates convicted on September 10, 1977 or thereafter, regardless of the date of the commission *289 of the offense, can only receive a maximum diminution of sentence of approximately twenty-five percent, i. e. "fifteen days per month for time actually served." The pertinent inquiry is whether this change is the type of retroactive law prohibited by the ex post facto clauses.
It has been stated that "any law which was passed after the commission of the offense for which the party is being tried is an ex post facto law when it inflicts a greater punishment than the law annexed to the crime at the time it was committed, or which alters the situation of the accused to his disadvantage." In re Medley, 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835 (1890), quoted in State v. Curtis, supra (emphasis added). Applying these principles, courts have held that the ex post facto clause prevents legislatures from retroactively increasing punishment for past criminal acts and consequently have struck down as unlawful increases in punishment retroactive changes in post conviction treatment of individuals. See Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937); In re Medley, supra; State v. Bullock, 263 La. 946, 269 So.2d 824 (1972); State ex rel. Woodward v. Board of Parole, 155 La. 699, 99 So. 534 (1924). In State v. Curtis, supra, we found that the changes in La.R.S. 15:571.3 relative to eligibility for diminution of sentence for good behavior fell within this classification. We conclude that the change in La.R.S. 15:571.4 is similarly unconstitutional.
Under the rationale of Curtis and the cases relied upon therein, there is no analytical distinction between a change in eligibility for diminution of sentence for good behavior and a change in the basis for computing good time credits. While there is no vested right in either situation, both amendments are not simply "minor changes in the handling of prisoners" which should not automatically trigger application of the ex post facto prohibition, but rather significantly affect "release eligibility." State v. Curtis, supra.[3] Thus La.R.S. 15:571.4(C) may not operate against inmates who committed the offense for which they have been sentenced prior to the enactment and effective date of Acts 1977, No. 665, § 1. Rather the controlling date for application of the statutory provisions must be the date the offense was committed. Thus under the pertinent legislation: (1) any person confined to the custody of the Department of Corrections who committed the offense for which he has been sentenced on or prior to September 9,1977, and who would otherwise be eligible for diminution of sentence for good behavior, see discussion of statutory eligibility, supra, must be eligible for a maximum of twenty-five days good time credit per month; [4] (2) any person confined to the custody of the Department of Corrections who committed the offense for which he has been sentenced on September 10, 1977 or thereafter, and who is otherwise eligible for diminution of sentence for good behavior, is only eligible for a maximum of fifteen days good time credit per month.
Forfeiture of Good Time By Inmates Whose Parole Has Been Revoked
Prior to 1972, La.R.S. 15:571.4(B), the statutory provision authorizing diminution of sentence for good behavior for persons committed to the custody of the Department of Corrections, was silent as to the effect of parole revocation on previously earned good time. See Acts 1964, No. 426, § 2. However, in 1972, the statute was amended to provide that "[g]ood time which has been earned will not be forfeited except *290 that an inmate . . . who is returned to an institution due to revocation of parole will forfeit all good time earned on that portion of sentence served . . . prior to parole." Acts 1972, No. 739, § 1 (emphasis added). The Act further provided that it was applicable to all inmates then in custody or thereafter sentenced to the department of Corrections but did specifically state that "parole violators presently in custody will not forfeit good time earned on that portion of their sentence served prior to parole . . ." Acts 1972, No. 739, § 2. The effective date of the Act was July 26, 1972.
In 1974, however, La.R.S. 15:571.4(b) was again amended in this regard to provide that "[a]n offender who is returned to an institution due to revocation of parole will forfeit all good time earned on that portion of the sentence served prior to parole up to a maximum of one hundred and eighty days." Acts 1974, No. 200, § 1 (emphasis added). The Act further stated that "[t]he provisions of this Act relative to the maximum good time forfeitable upon parole revocation shall be retroactive." Acts 1974, No. 200, § 2.[5] Thus by its terms La.R.S. 15:571.4(B), interpreted with its various amendments and their effective dates, presently provides that parole violators in custody as of July 26, 1972 were not subject to forfeiture of good time earned on that portion of their sentence served prior to parole, but that all other inmates then in custody or thereafter sentenced to the Department of Corrections, regardless of the date of the commission of their offense or of their parole, would forfeit all good time earned on that portion of their sentence served prior to parole up to a maximum of 180 days when their parole is revoked and they are returned to the Department of Corrections institution.
It has been argued, however, that these provisions on forfeiture of good time upon revocation of parole are in conflict with general statutory provisions on parole revocation and that the latter provisions should control. In 1952, the legislature revised this state's statutes and at that time provided with respect to parole revocation as follows:
If it is determined that the parolee has violated his parole . . . the Board shall revoke the said parole and the said parolee may be required to serve out the whole term for which he was sentenced, subject to the deduction of the time he had served prior to his parole and to any diminution of sentence for good behavior he shall have earned or may thereafter earn.

Acts 1952, No. 162, § 8 (emphasis added). Although the statute was amended in 1956, the language with respect to diminution of sentence for good behavior remained unchanged. Acts 1956, No. 66, § 1. In 1968, La.R.S. 15:574.9(E), the above mentioned provision, was amended to provide as follows:
When the parole of a parolee has been revoked by the board for the violation of the conditions of parole, the parolee shall be returned to the institution from which he was paroled to serve the remainder of his sentence as of the date of his release or parole, subject to consideration by the board of any commutation of the sentence, the time he served prior to his parole, and any diminution of sentence earned for good behavior while in the institution.

Acts 1968, No. 191, § 1 (emphasis added).[6] The effective date of this Act was July 31, 1968. The legislature again amended the *291 statute in 1974, but the language with respect to diminution of sentence for good behavior was not altered. Acts 1974, No. 203, § 1.
Rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible, but that if there is a conflict the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977); State v. Maduell, 326 So.2d 820 (La.1976); Teachers' Retirement System v. Vial, 317 So.2d 179 (La.1975). See also Sutherland, Statutory Construction, § 51.05 (4th ed. 1974). Applying this principle we conclude that the controlling provision with respect to forfeiture of good time in the present context is La.R.S. 15:571.4. That statute deals specifically with procedures for earning, computing and forfeiting good time, while La.R.S. 15:574.9 deals generally with parole revocation, simply referring to diminution of sentences for good behavior in one subsection. Thus, the language in La.R.S. 15:574.9 as amended by Acts 1968, No. 191, § 1 and Acts 1974, No. 203, § 1 that a parolee is to serve the remainder of his sentence, following revocation, subject to "any diminution of sentence earned for good behavior while in the institution" must be read together with and is modified by the language in La.R.S. 15:571.4(B), as amended by Acts 1972, No. 739, § 1, Acts 1974, No. 200, § 1 and Acts 1977, No. 665, § 1, relative to forfeiture of good time upon a parole revocation.
Having determined that La.R.S. 15:571.4(B) prevails insofar as there is any conflict with La.R.S. 15:574.9, we must now determine whether the application of the 1972 provisions providing for forfeiture of good time for all inmates returned to an institution for parole violation on or after July 26, 1972, as amended retroactively in 1974 to provide for a maximum good time forfeitable, violates the ex post facto prohibitions in both the United States and Louisiana Constitutions. It is well settled that any law passed after the commission of an offense which in relation to that offense, or its consequences, alters the situation of a party to his disadvantage is an ex post facto law. Calder v. Bull, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1978); In re Medley, supra; State v. Curtis, supra. As noted in Curtis, "a major principle underlying the ex post facto proscription is that laws which adversely affect individuals who have committed particular past acts failed to provide a fair warning of the extent to which that person can be punished" and that "retroactive legislation frustrates reliance upon existing law and does not serve an object of criminal law by providing guidance for conduct."
Applying these basic principles to the statute providing for forfeiture of good time earned on that portion of a sentence served prior to parole when parole is subsequently revoked, we conclude that a violation of the ex post facto prohibitions occurs when the statute operates against a person who was paroled prior to July 26, 1972, the effective date of Acts of 1972, No. 739, § 2. However, it is not an ex post facto law to apply the provision to inmates paroled thereafter. In those cases, at the time of parole, inmates were or are put on notice by the wording of the statute that should they violate a condition such that parole is revoked and they are returned to the institution, they will as a consequence thereof forfeit good time credit. Thus the date of parole, rather than the date of the commission of the offense, triggers the application of the forfeiture provisions. Cf. State v. Williams, 358 So.2d 943 (La.1978); State v. Guidry, 169 La. 215, 124 So. 832 (1929); Lafave and Scott, Criminal Law § 12 (1969).
Thus in summary, all inmates paroled prior to July 26, 1972, may not be subjected to the forfeiture provisions, while all inmates paroled on July 26,1972 or thereafter shall, upon their return to the institution following revocation of parole, forfeit all good time earned on that portion of the sentence served prior to parole up to a maximum of 180 days. La.R.S. 15:571.4(B) as amended by Acts 1972, No. 739, § 1 and modified by Acts 1974, No. 200, § 1.
*292 Having resolved the various legal issues presented in these nine consolidated cases, we now turn to the specific allegations in each petition:
In State ex rel. Bickman v. Dees, 367 So.2d 283; State ex rel. Bell v. Dees, No. 62,696; State ex rel. Wade v. Dees, No. 62,800; State ex rel. Cornell v. Dees, No. 62,802; and State ex rel. Gifford v. Dees, No. 62,918, each petitioner states that the offense for which he is incarcerated was committed prior to September 10, 1977, but after September 15, 1975. Assuming the correctness of the allegations, for the reasons assigned above, the classification of petitioners' sentences as without benefit of diminution of sentence for good behavior is improper at this time, and the cases are remanded to their respective district courts for resentencing under the discretionary authority vested with the trial judge by La. R.S. 15:571.3(C), as amended by Acts 1975, No. 727, § 1, the law in effect at the time of the commission of the offenses. In particular, the sentence shall state whether, in his discretion, the trial judge considers petitioner entitled to diminution of sentence for good behavior. It is additionally noted that since the offenses of each petitioner were committed prior to September 10, 1977, should petitioner be eligible for good time, the appropriate basis for computation is maximum of twenty-five (25) rather than fifteen (15) days per month. See La.R.S. 15:571.4(B) and discussion supra.
In State ex rel. Stevens v. Dees, No. 62,717 and State ex rel. Hinkley v. Phelps, No. 63,072, each petitioner states that his offense(s) was (were) committed prior to September 10,1977. Assuming the correctness of these allegations, for the reasons assigned above, the cases are remanded to the respective district courts with instructions to order the Department of Corrections to recompute petitioners' good time allowance at the rate of a maximum of twenty-five (25) days per month pursuant to La.R.S. 15:571.4(B) as in effect at the time of the commission of the offenses. With respect to Hinkley, it is specifically noted that because he is entitled to have diminution of sentence for good behavior computed on the basis of twenty-five (25) days per month, there is no merit to his argument that his guilty plea was involuntary due to misinformation given to him by the trial court relative to his good time release date.[7]
In State ex rel. Paulhus a/k/a O'Brien v. Custodian of Records, et al, No. 62,969, and State ex rel. Manuel v. Phelps, No. 63,069, each petitioner complains of the forfeiture of good time he accumulated prior to parole when he was subsequently returned to the institution following parole revocation. Petitioner Paulhus a/k/a O'Brien alleges that he was released on parole on September 20, 1974, while petitioner Manuel asserts that his parole release date was March 13, 1973. Assuming the correctness of these allegations, for the reasons assigned above, the petitioners are not entitled to relief. Since they were both paroled after the July 26, 1972 effective date of La.R.S. 15:571.4(B) as amended by Acts 1972, No. 739, § 1 [subsequently modified by Acts 1974, No. 200 § 1], they were informed on the date of release that should they later have their parole revoked and be returned to the institution they would forfeit good time earned on that portion of the sentence served prior to parole.
For the reasons assigned, the writs in State ex rel. Bickman v. Dees, 367 So.2d 293; State ex rel. Bell v. Dees, 367 So.2d 293; State ex rel. Stevens v. Dees, 367 So.2d 293; State ex rel. Wade v. Dees, 367 So.2d 294; State ex rel. Cornell v. Dees, 367 So.2d 294; State ex rel. Gifford v. Dees, 367 So.2d 294; and State ex rel. Hinkley v. Phelps, 367 So.2d 294 are granted and the cases are remanded to their respective district courts for further proceedings in accordance with law.
*293 For the reasons assigned, the writs in State ex rel. Paulhus a/k/a O'Brien v. Custodian of Records, et al, 365 So.2d 828, and State ex rel. Manuel v. Phelps, 365 So.2d 828, are denied.
SANDERS, C. J., and MARCUS, J., dissent, adhering to their dissent in State v. Curtis, 363 So.2d 1375 (La.1978).
SUMMERS, J., dissents.
NOTES
[1] The 1972 amendment clarified eligibility for good time of inmates sentenced to life imprisonment, as well as requiring the establishment of "procedures for awarding and recording of good time."
[2] La.Const. Art. 3, § 19 (1974) provides as follows:

Section 19. All laws shall take effect on the sixtieth day after final adjournment of the session in which they were enacted, and shall be published prior thereto in the official journal of the state as provided by law. However, any bill may specify an earlier or later effective date.
The general effective date for the 1975 regular session was September 12, 1975, while for the 1977 regular session it was September 9, 1977. Acts 1975, No. 727, however, specifically stated that it applied after September 15, 1975. Acts 1977, No. 633 provided that the act applied after September 9, 1977. While the controlling event established in the act was the sentencing of the defendant as a habitual offender rather than the commission of the offense, these dates rather than the general effective dates are employed to trigger application of the statutes under Curtis. This procedure is used for purposes of clarity and ease of application, as well as to comply with the constitutional language that "any bill may specify an earlier or later effective date." It should be noted that the difference between the general effective dates and the specified dates stated in the acts is only a few days in favor of the defendant.
[3] The legislature itself impliedly acknowledged the true import of the change in the basis for computing good time by having the amendment providing for a maximum credit of fifteen days per month applicable only to those inmates convicted after September 9, 1977, leaving intact the provisions for a twenty-five day maximum for those convicted on or prior to that date.
[4] At this point, because the issue is not presented by any of the cases before us, we have not considered whether there are any ex post facto problems relative to inmates who committed offenses before the effective date of Acts 1972, No. 739, § 1, the provision which sets forth computation on the basis of twenty-five days per month.
[5] The language relative to maximum good time forfeitable was carried over when La.R.S. 15:571.4 was amended in 1977 to change the basis for computation of good time from a maximum of twenty-five days per month to a maximum of fifteen days per month. Acts 1977, No. 665, § 1. See discussion of computation of good time, supra.
[6] It is noted that while La.R.S. 15:574.9(E) refers to revocation of parole for a "condition" violation La.R.S. 15:574.10 provides that when parole is revoked for conviction of a felony, "[t]he term for which the defendant shall be imprisoned as a parole violator shall be the same as that provided in cases of revocation for violation of the conditions of parole." See Acts 1968, No. 191, § 1.
[7] At the time defendant pleaded guilty, the trial judge allegedly informed defendant of his good time release date based on a maximum of twenty-five (25) days per month. Petitioner complained that if he was indeed actually eligible for a maximum good time credit of only fifteen (15) days per month, his plea was void.