978 So.2d 419 (2007)
Walter A. WILLIAMS
v.
Johnny CREED, Assistant Secretary, Office of Adult Services, Louisiana Department of Public Safety and Corrections, and Carla Maxwell, Records Analyst, Hunt Correctional Center.
No. 2007 CA 0614.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
*420 Walter A. Williams, Homer, LA, In Proper Person.
William L. Kline, Baton Rouge, LA, for Defendants-Appellees, Johnny Creed, Carla Maxwell, and Louisiana Dept. of Public Safety and Corrections.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
Walter A. Williams, an inmate in the custody of the Louisiana Department of Public Safety and Corrections (DPSC), appeals a judgment that affirmed DPSC's decision in an administrative remedy procedure and dismissed his petition for judicial review of that decision. We affirm the judgment.

*421 FACTUAL AND PROCEDURAL BACKGROUND
Williams filed a petition for judicial review of the final agency decision of DPSC in Administrative Remedy Procedure No. HCC XXXX-XXXX, in which he challenged DPSC's denial of his "good time" eligibility.[1] According to the transcript of proceedings in Orleans Parish Criminal District Court, Docket No. 261-128, Williams pled guilty to two counts of attempted aggravated rape and, pursuant to a plea agreement, was sentenced to twenty-five years on each count, to run consecutively. The offenses occurred on July 16, 1977, and July 29, 1977; he entered his guilty pleas and was sentenced on December 16, 1977. The transcript of the sentencing hearing reveals that before Williams entered his guilty pleas, the court stated:
I've taken part in the plea bargain by indicating the sentence I'm going to give to you or impose upon [you] as a result of the entering of these pleas of guilty. So, the plea bargain is that you are going to plead guilty to attempted aggravated rape as to count one, and your sentence is going to be twenty-five years in the State Penitentiary. You are also to plead guilty as to count two of the Bill of Indictment and your sentence will be twenty-five years in the State Penitentiary, to run consecutive to the sentence imposed.
Now, these sentences are not going to be increased although the State may in fact file a multiple charge against you.
Pursuant to LSA-R.S. 15:529.1, the state did charge him with being a multiple offender as to the second count.[2] Williams also admitted the allegation of the multiple offender charge, so his original sentence on count two was vacated and a new sentence was entered, requiring him to serve twenty-five years in the custody of DPSC, consecutive to the sentence imposed on the first count. The court did not stipulate that the sentence on the multiple offender conviction was to be served without good time.
Williams was remanded to the custody of DPSC and began serving his sentence at Angola. While at Angola, he received a Master Prison Record with a time computation worksheet that showed his release date as November 11, 2003. This computation included good time credit for time served on both counts, pursuant to the provisions of LSA-R.S. 15:571.3 that were in effect when his offenses were committed. In October 1999, Williams was transferred to Hunt Correctional Center, where he was eventually given a revised Master Prison Record showing his release date as December 27, 2015. When he questioned the record analyst about the change, he was informed that the prior computation was incorrect and that, as of his sentencing date as a multiple offender, he was not entitled to good time credit on the multiple offender conviction under LSA-R.S. 15:571.3(C).
Williams filed for administrative relief in May 2000, pursued the administrative remedy procedure with DPSC through all the required steps, and was denied relief at each level. His petition for judicial review of that decision was filed January 16, 2001. The Commissioner held a hearing on his complaint and prepared a recommendation for the district court judge, in which he concluded the DPSC decision was correct *422 and Williams' petition for judicial relief should be dismissed.[3] Williams timely filed a traversal of the Commissioner's report. The district court judge adopted the Commissioner's report and recommendation and dismissed Williams' petition in a judgment dated June 7, 2006. This appeal followed, in which Williams contends that the application to him of the amended version of LSA-R.S. 15:571.3 violates the ex post facto clauses of the constitutions of Louisiana and the United States.

APPLICABLE LAW
Louisiana Revised Statute 15:1171 grants authority to the DPSC to adopt administrative remedy procedures in compliance with federal law to receive, hear, and dispose of all offender complaints and grievances. The statute further provides that such complaints and grievances include actions pertaining to time computations, such as computations of good time. The administrative remedy procedure is to provide the exclusive remedy to the offender for complaints governed thereby. See Madison v. Ward, 00-2842 (La.App. 1st Cir.7/3/02), 825 So.2d 1245, 1251-52 (en banc). Accordingly, a prisoner alleging an error in computation of good time must pursue his claim through the administrative remedy procedure, with appellate review first at the district court and then with this court. Madison, 825 So.2d at 1255; see also Owens v. Stalder, 06-1120 (La.App. 1st Cir.6/8/07), 965 So.2d 886, 888.
Louisiana Revised Statute 15:1177 provides for judicial review of an adverse decision by the DPSC. On review of the agency's decision, the district court functions as an appellate court. Its review is to be confined to the record and is limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level. LSA-R.S. 15:1177(A)(5). The court may affirm the decision of the agency, remand the case for further proceedings, or order that additional evidence be taken. LSA-R.S. 15:1177(A)(8). The court may reverse or modify the administrative decision only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. LSA-R.S. 15:1177(A)(9).
On review of the district court's judgment under LSA-R.S. 15:1177, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. McCoy v. Stalder, 99-1747 (La. App. 1st Cir.9/22/00), 770 So.2d 447, 450-51.
Article I, § 10 of the United States Constitution and Article I, § 23 of the Louisiana Constitution prohibit applying criminal laws ex post facto. Traditionally, Louisiana courts have held that in order for a criminal or penal law to fall within this *423 prohibition, the law had to be passed after the date of the offense, relate to that offense or its punishment, and alter the situation of the accused to his disadvantage. State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735, 743-44, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001). However, the Louisiana Supreme Court narrowed the focus of ex post facto analysis in Louisiana in the Olivieri case. While the court recognized that, in previous ex post facto analysis, Louisiana jurisprudence had broadly focused on whether the change in a law operated to the disadvantage of an accused, the Olivieri court adopted the current federal approach to ex post facto analysis, which focuses on whether any change in the law altered the definition of criminal conduct or increased the penalty by which the crime was punishable. Olivieri, 779 So.2d at 743-44; State v. Smith, 794 So.2d 41, 45 (La.App. 5th Cir.5/30/01), writ denied, 01-1921 (La.6/7/02), 817 So.2d 1145.
Plea bargaining is the process whereby the accused and the prosecutor in a criminal case work out a mutually satisfactory disposition of the case subject to court approval. It usually involves the defendant's plea of guilty to a lesser offense or to only one or some of the counts of a multi-count indictment in return for a lighter sentence than the sentence possible for the graver charge. State v. Canada, 01-2674 (La.App. 1st Cir.5/10/02), 838 So.2d 784, 788. However, the sentencing function is exclusively within the province of the trial court's authority and, even if the parties agree to a specific sentence, a court that has not agreed to abide by any such agreement retains the discretion to reject such an agreement. State v. Hennis, 98-0664 (La.App. 1st Cir.2/19/99), 734 So.2d 16, 18, writ denied, 99-0806 (La.7/2/99), 747 So.2d 16. Nevertheless, where the plea agreement calls for a legal sentence and the trial court agrees, the trial court is bound by the terms of the agreement. See State v. Anthony, 99-0107 (La.App. 4th Cir.4/7/99), 735 So.2d 746, 750-51, writ denied, 99-1360 (La.6/25/99), 746 So.2d 606; State v. Terrebonne, 01-2632 (La.App. 1st Cir.6/21/02), 822 So.2d 149, 152.

DISCUSSION
In this appeal, Williams urges this court to overturn the judgment, because at the time he committed his offenses, the provisions allowing him good time under LSA-R.S. 15:571.3 stated that a person convicted as a multiple offender after September 15, 1975, could, on order of the court, be denied the benefit of diminution of sentence for good behavior.[4] Williams points out that when he was sentenced, the court did not order that he was to be denied good time on the multiple offender conviction. Therefore, he contends that not only his sentence on count one, but also his sentence on count two, should be computed with time off for good behavior.[5] The statute was amended in 1977 to provide that multiple offenders convicted and sentenced after September 9, 1977, shall in no case be entitled to diminution of sentence for good behavior.[6] Williams contends that although he was sentenced after September 9, 1977, the application of this amendment to him violates the ex post facto clauses of the constitutions of Louisiana and the United States. Williams also claims that Louisiana courts interpreting *424 the application of LSA-R.S. 15:571 in similar situations have concluded that the version of the good time statute in effect when the crimes were committed must be applied to the computation of the sentence, even if the sentence was actually imposed after September 9, 1977.
Having reviewed the cited jurisprudence, we note that all the cases cited by Williams  as well as many other cases  unequivocally support his argument. However, none of these cases were decided after the Olivieri court narrowed the principles to be used in an ex post facto analysis. Moreover, our research has revealed no reported cases applying the Olivieri ex post facto analysis to the issue before this court, namely, whether the application of a version of LSA-R.S. 15:571.3 that was amended after commission of the offense, but before conviction of the offense, and which removed the eligibility for early release that was available to the defendant through good time at the time the offense was committed, violates the prohibition against a change in the law that increases the penalty by which the crime is punishable. Therefore, this is a res nova issue for this court.
The first case in which the Louisiana Supreme Court addressed this issue was State v. Curtis, 363 So.2d 1375 (La.1978). In that case, the defendant had committed armed robbery in February 1975, at which time LSA-R.S. 15:571.3(B) provided that persons sentenced on an armed robbery conviction and other felonies could be afforded the benefit of good time credits. That statute was amended in 1975 to state that a person convicted as a multiple offender after September 15, 1975, could be denied good time credits on order of the court. Curtis was convicted in April 1976 and sentenced in May 1976; the court ordered that his sentence as a multiple offender was to be served without diminution of sentence. Curtis, 363 So.2d at 1379. Curtis claimed that the statute denying him the opportunity to earn diminution for good behavior was passed by the legislature after commission of the crime for which he was sentenced and that application of the statute to him constituted a prohibited ex post facto application. Curtis, 363 So.2d at 1378-79. After an extensive analysis of the historical application of the ex post facto clauses, the supreme court held that applying the amended version of LSA-R.S. 15:571.3 in sentencing Curtis for a crime committed before the effective date of the amendment violated the ex post facto clauses of the United States and Louisiana Constitutions, because it operated as a "material disadvantage to the defendant." In so doing, the court cited Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937), in which the United States Supreme Court had stated:
The Constitution forbids the application of any punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer. . . . We need not inquire whether this is technically an increase in the punishment annexed to the crime. . . . It is plainly to the substantial disadvantage of petitioners. . . .
Curtis, 363 So.2d at 1381 (citations omitted). Thus, the court found that if "release eligibility" is made impossible or more difficult by application of a statute amended after commission of the offense, such application violated the ex post facto prohibition by applying "a new punitive measure to a crime already consummated to the detriment or material disadvantage of the wrongdoer. . . ." Curtis, 363 So.2d at 1382-83 (citations omitted).
Later cases, all of them citing Curtis or applying the "disadvantage to the defendant" factor, reached a similar conclusion. *425 See, e.g., State ex rel. Goiner v. Dees, 366 So.2d 1353 (La.1978); State ex rel. Bickman v. Dees, 367 So.2d 283 (La.1978); State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446; State v. Delaughter, 29,974 (La. App. 2nd Cir.12/10/97), 703 So.2d 1364, writ denied, 98-0018 (La.5/1/98), 805 So.2d 201; George v. Baker, 99-0234 (La.App. 1st Cir.11/5/99), 746 So.2d 783; and Payton v. Cooper, 05-0127 (La.App. 1st Cir.2/10/06), 928 So.2d 605, writ denied, 06-2008 (La.5/4/07), 956 So.2d 616.[7] In fact, after this jurisprudence had become firmly established, many decisions in similar situations did not even refer to the specific ex post facto principles involved, but simply followed the pattern originally established in the Curtis case. See, e.g., State v. Benwoir, 365 So.2d 1106 (La.1978); State v. Siegel, 376 So.2d 492 (La.1979); State v. Singleton, 96-2380 (La.2/7/97), 688 So.2d 486; State v. Arceneaux, 97-197 (La. App. 3rd Cir.6/4/97), 695 So.2d 1148, writ denied, 97-1807 (La.1/9/98), 705 So.2d 1096; and State v. Francis, 97-0201 (La. App. 1st Cir.2/20/98), 709 So.2d 834, writs denied, 98-1054 (La.5/8/98), 719 So.2d 57, and 98-0887 (La.9/4/98), 723 So.2d 961.
Having reviewed the cases cited by Williams, as well as many other cases applying an ex post facto analysis to situations involving the numerous amendments to the good time statute, we conclude that this line of cases does not comply with the narrower Olivieri criteria. After Olivieri, the only relevant issues regarding a legislative change are "whether any such change alters the definition of criminal conduct or increases the penalty by which the crime is punishable." Olivieri, 779 So.2d at 744. In other words, in a post-sentence context, once a sentence has been imposed on a defendant, any change in the law that later occurs cannot be applied to that defendant to increase that sentence or penalty. Anything other than or less than this is not protected by the ex post facto clauses in the United States and Louisiana Constitutions.
In the matter before us, the definition of the criminal conduct committed by Williams was not changed by the amendment to the good time statute that occurred after he committed that crime. The only question, therefore, is whether that change could be applied to Williams in such a way that it increased the penalty by which his crime as a multiple offender was punishable. The district court imposed on him a sentence or penalty of twenty-five years for the second count of attempted aggravated rape. The court advised that, pursuant to the plea agreement, the sentence would not be increased, even if the state filed a multiple offender charge against Williams. After Williams was charged as a multiple offender, the original sentence on the second count was vacated, and a new sentence was imposed, based on the multiple offender adjudication. That sentence was also twenty-five years. There was no increase in the penalty imposed on him. Rather, the change in the good-time statute simply removed the opportunity to take advantage of provisions for early release.[8]
*426 For the foregoing reasons, we conclude that under the Olivieri analysis, there was no application of an ex post facto law to Williams. Therefore, the decisions of the district court and DPSC on this issue were correct.[9]

CONCLUSION
We affirm the judgment of the district court, which dismissed Williams' suit and rendered judgment in favor of DPSC and against Williams.[10] Total costs of this appeal are assessed against Williams.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.
DOWNING, J., dissenting.
Respectfully, I dissent. In this case the judge could have eliminated good time. He did not. We should not.
NOTES
[1] Diminution of sentence for good behavior, as provided in LSA-R.S. 15:571.3, is commonly referred to as "good time."
[2] In connection with the multiple offender charge, Williams admitted he had a previous conviction of attempted simple burglary, for which he had been sentenced to one year at hard labor.
[3] The office of Commissioner of the Nineteenth Judicial District Court was created by LSA-R.S. 13:711 to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. The Commissioner's written findings and recommendations are submitted to a district court judge, who may accept, reject, or modify them. LSA-R.S. 13:713(C)(5).
[4] See 1975 La. Acts, No. 727, § 1.
[5] According to the response of the records analyst in the record, he was being given good time on his sentence on count one.
[6] See 1977 La. Acts, No. 633, § 1.
[7] Although this case was decided after the Olivieri decision, it did not address the precise issue before this court. In Payton, the effect of the changed statute defining a 1978 Florida robbery conviction as a "crime of violence" did not affect the penalty imposed for that earlier conviction. The impact of that classification applied only to his 1996 offense, which was committed after the crime of robbery was defined as a "crime of violence." Therefore, because the relevant offense in an ex post facto analysis is the current crime, not the predicate crime, it was not a prohibited ex post facto application of the law. Payton, 928 So.2d at 607-08.
[8] In Olivieri, the Louisiana Supreme Court cited California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), in which the United States Supreme Court had stated that "the focus of the ex post facto inquiry is not whether a legislative change produces some ambiguous sort of `disadvantage,' nor, as the dissent seems to suggest, on whether an amendment affects a prisoner's opportunity to take advantage of provisions for early release' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which the crime is punishable." Olivieri, 779 So.2d at 743 (emphasis added).
[9] Williams did not raise an issue regarding enforcement of his plea bargain. However, we have considered whether the multiple offender adjudication resulted in the imposition of a punishment in excess of what he had agreed to when he admitted the allegations underlying the multiple offender count. The district court judge participated in the plea bargain process and agreed that Williams' penalty on count two would not be enhanced or increased if a multiple offender bill were filed against him on that count. Such an agreement is binding. See Terrebonne, 822 So.2d at 152; State ex rel. Allen v. State, 00-0220 (La.5/11/01), 792 So.2d 1. We have concluded that the withdrawal of Williams' eligibility for early release did not enhance or increase his penalty, which remained the same after the multiple offender adjudication as it was under the original conviction on count two. Therefore, there was no breach of the plea bargain in this case.
[10] Although Williams named two other persons employed in various capacities by DPSC, his claims against them all involve the calculation of his good time, which is ultimately the responsibility of DPSC. By our action in this case, those allegations are moot.