KNOLL, J.
| ¶ This case concerns whether defendant, Paul Massey, is eligible to receive “good time” credits when the law changed after the offenses were committed, eliminating Massey’s eligibility to earn early release.
In 2006, the Legislature amended the statute that gave inmates the capacity to earn early release from their prison sentence — “good time” credits — in exchange for good behavior and the performance of work or self-improvement activities. This amendment significantly narrowed the class of inmates qualified to receive good time credits, excluding from eligibility, as pertinent here, those convicted of felony carnal knowledge of a juvenile or molestation of a juvenile. Massey committed both felony carnal knowledge of a juvenile and attempted molestation of a juvenile[1] on August 9, 1994, in Sabine Parish. His victims, however, did not report his crimes to the authorities until 2004, and a jury did not convict Massey of these offenses until February 7, 2007. We are asked to decide which version of the good time statute applies to Massey — the law in effect at the time he committed his ^crimes, under which Massey unequivocally is eligible for, and indeed has earned, good time credits, or the law in effect at the time of his conviction, which denies him early release regardless of his demonstrated good behavior. Because the rescission of good time eligibility creates a significant risk of prolonging his incarceration and increases the severity of Massey’s sentence by altering the terms and conditions under which he must serve his penalty, we find application of the amended law would violate the ex post facto clauses of the United States and Louisiana Constitutions. Applying the law in effect at the time the offenses *782 were committed, we find Massey is eligible to receive good time credits and is entitled to have his time recomputed under the statute before it was amended.
BACKGROUND AND PROCEDURAL HISTORY
At the time Massey committed his crimes, La.Rev.Stat. § 15:571.3, as then enacted, provided for good time eligibility to “[e]very inmate in the custody of the department who has been convicted of a felony and sentenced to imprisonment for a stated number of years or months.” 1991 La. Acts No. 138; La.Rev.Stat. § 15:571.3(B)(1) (1991). For ease of reference, we will refer to this earlier enacted version of § 15:571.3 as “Act 138.” 'In 2006, the Legislature amended § 15:571.3 with its enactment of La. Acts No. 572. .We will refer to this later version of § 15:571.3 as “Act 572.” This later act narrowed the availability of good time credits by excluding from eligibility, among others, those convicted of felony carnal knowledge of a juvenile, in violation of La.Rev.Stat. § 14:80, or of molestation of a juvenile, in violation of La.Rev.Stat. § 14:81.2. La.Rev.Stat. § 15:571.3(B)(2)(b) (2006). Act 572 specified that its provisions “shall apply only to persons convicted of offenses on or after August 15, 2006.” Although Massey committed the offenses on August 9, 1994, during the effective period of Act 138, he was convicted of his crimes on February 7, 2007 — after Act 572 by its own terms had become effective. Ultimately, Massey was sentenced to six years at hard | ¡¡labor for each of the two counts, with both terms to be served consecutively.[2]
The record reflects Massey sought to take advantage of the good time provisions available to him under § 15:571.3 as it was enacted at the time of his offenses.[3] Every iteration of Massey's master prison record that is before us indicates a full term release date of October 3, 2018. Likewise, each version of Massey’s master prison record prior to July 20, 2011, shows Massey’s good behavior earned him a release date which was consistently drawing nearer and nearer. Indeed, the master prison record dated June 14, 2007, reflects a diminution of sentence — or early release — date of April 4, 2012. Massey’s master prison record from January 29, 2011, reveals an adjusted early release date of September 6, 2011, reflecting 221 days of good time credit Massey earned. This early release date reflects, among other things, 180 days of educational credits Massey earned for taking a welding class which ran from January 11, 2008 to May 10, 2010, and 18 days for educational credits he garnered for participating in “Personal Development Module 1” which he completed on May 21, 2010.
In July 2011, two months before he was scheduled for early release, Massey received an amended master prison record indicating that all of his good time credit had been revoked and that he would not be eligible for release until October 3, 2018. Massey filed a formal request for adminis *783 trative relief as required by La.Rev.Stat. § 15:1172. Having exhausted the administrative process with the Department of Public Safety and Corrections affirming its amended computation of his sentence at each stage, Massey filed a petition for judicial review in the Nineteenth Judicial District Court according to La.Rev.Stat. § 15:1177. Citing State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735, the ^commissioner assigned to review Massey’s request also affirmed the Department’s decision to apply Act 572, the law in effect at the time of his conviction in 2007. The District Court, adopting the commissioner’s reasons, likewise affirmed the Department’s decision. Massey then appealed this judgment to the First Circuit Court of Appeal under La.Rev.Stat. § 15:1177(A)(10). Also citing this Court’s decision in Olivieri, the Court of Appeal affirmed the Department’s computation of Massey’s time, finding application of Act 572 did not violate the ex post facto clause because this post-offense change in the law did not “increase the penalty by which his crimes were punishable.” Massey v. Louisiana Dept. of Public Safety & Corrections, 13-0241 (LaApp. 1 Cir. 11/1/13), 2013 WL 5915742. We granted Massey’s writ application to address both the lower court’s interpretation of Olivieri and the ex post facto implications of the Department’s decision to apply a statute which denies an inmate eligibility to earn good time credit when the inmate was eligible to earn good time credit under the law in effect at the time he committed his crimes. Massey v. Louisiana Dept. of Public Safety & Corrections, 13-2789 (La.6/30/14), 148 So.3d 184.
DISCUSSION
We review the judgment of the Court of Appeal as provided by La.Rev.Stat. § 15:1177. Section 15:1177(A)(9) lays out the exclusive grounds upon which this Court could reverse or modify the Department’s decision. As relevant to Massey’s petition for review, to rule in his favor, we must find his “substantial rights ... have been prejudiced because the administrative findings, inferences, conclusions, or decisions are ... [i]n violation of constitutional or statutory provisions.” La.Rev. Stat. § 15:1177(A)(9)(a).
This court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Hyde, 07-1314, p. 1 (La.11/21/07), 968 So.2d 726; | State v. Sugasti, 01-3407, p. 4 (La.6/21/02), 820 So.2d 518, 520; State v. Wright, 384 So.2d 399, 401 (La.1980); State v. Gros, 205 La. 935, 18 So.2d 507 (1944). This strong jurisprudential presumption has significant constitutional underpinnings. Both Article I, section 9 of the United States Constitution and Article I, section 23 of the Louisiana Constitution prohibit the enactment of any ex post facto law. California Dept. of Corrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995); Olivieri, 00-0172 at p. 14, 779 So.2d at 743 (bringing Louisiana ex post facto law in line with federal jurisprudence). In accordance with the Framer’s original understanding of the Ex Post Fac-to Clause, the United States Supreme Court has held that “the Clause is aimed at laws that ‘retroactively alter the definition of crimes or increase the punishment for criminal acts.’ ” Morales, 514 U.S. at 504, 115 S.Ct. at 1601; (citing Calder v. Bull, 3 U.S. (Dall.) 386, 391-92 (1798) (opinion of Chase, J.); Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 68-69, 70 L.Ed. 216 (1925)). Massey argues that application of Act 572 denies him good time credit eligibility which was available to him under Act 138 violating this critical constitutional protection.
*784 In order to weigh the merits of Masse/s petition, we first must determine whether the Department seeks to apply a law “to events occurring before its enactment.” Lynce v. Mathis, 519 U.S. 438, 441, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997). Here, Massey committed his crimes on August 9, 1994. The Department applied a law to his sentence that the Legislature did not pass until over a decade after these offenses occurred. Thus, the retroactive nature of the Department’s application of Act 572 is unquestioned.
Under both federal and state law, our next task is to determine whether or not this retroactive application of the law violates the ex post facto prohibition by asking whether the change in the law alters the definition of criminal conduct or increases the punishment for the crime. Id.; Morales, 514 U.S. at 504, 115 S.Ct. at 61601; Olivieri, 00-0172 at pp. 15-16, 779 So.2d at 744. Our review is “limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level.” La.Rev.Stat. § 15:1177(A)(5). Because Massey’s petition alleges exclusively that application of Act 572 increases the penalty to which he is subject, we address only this narrow issue — that is, whether application of Act 572 increases Massey’s punishment when it denies him eligibility for good time credits previously available to him under the law in effect at the time he committed his offenses.
In determining whether retroactive application of a law increases the punishment to which an inmate would be subject, the relevant inquiry is whether the change in the law “creates a significant risk of prolonging [the inmate’s] incarceration.” Garner v. Jones, 529 U.S. 244, 251, 120 S.Ct. 1362, 1368, 146 L.Ed.2d 236 (2000); Peugh v. United States, — U.S. —, 133 S.Ct. 2072, 2082, 186 L.Ed.2d 84 (2013) (citing Gamer for the proposition that “[t]he touchstone of this Court’s inquiry is whether a given change in law presents a ‘sufficient risk of increasing the measure of punishment attached to the covered crimes’ ”). As we have stated it another way, retroactive application of a law increases a defendant’s punishment in violation of the Ex Post Facto Clause when it “increase[s] the severity of the sentence by altering the terms and conditions under which defendant must serve the penalty.” Hyde, 07-1314 at p. 2, 968 So.2d at 726 (finding that application of a sentencing law enacted post-offense runs afoul of the ex post facto prohibition).
Regardless of the test we employ,' the Department’s retroactive application of Act 572 to Massey’s sentence cannot withstand ex post facto scrutiny. Indeed, Massey has unequivocally endured a longer sentence because the Department chose to apply a law that was not enacted at the time he committed his crimes. As the record clearly reflects, Massey could have been released as early as 2011 if the 17Pepartment had not revoked the credits he had earned.[4] Therefore, in Massey’s case, application of the later enacted Act 572 has not created merely a hypothetical “significant risk” of prolonging his incar *785 ceration. The Department’s application of Act 572 has actually prolonged his incarceration by a number of years. Additionally, by denying Massey good time credit that would have been available to him at the time he committed his offense, the Department has certainly increased Massey’s penalty by altering the “the terms and conditions under which [he] must serve the penalty.” Hyde, 07-1814 at p. 2, 968 So.2d at 726. Thus, we find retroactive application of Act 572 increases Massey’s punishment and, accordingly, violates the prohibition against the application of ex post facto enactments.
Moreover, as Massey has highlighted in his arguments before every tribunal that considered his petition for review, both this Court and the United States Supreme Court have held retroactive application of a law denying an inmate eligibility to earn credits for good conduct unquestionably increases the punishment to which an inmate would be subject and, therefore, violates the prohibition against ex post facto enactments. Weaver v. Graham, 450 U.S. 24, 35-36, 101 S.Ct. 960, 968, 67 L.Ed.2d 17 (1981) (statute retroactively reducing the number of good time credits an inmate was eligible to receive changed the “quantum of punishment” and, therefore, violated the prohibition against ex post facto laws); State v. Singleton, 96-2380 (2/7/97), 688 So.2d 486 (retroactive application of statute eliminating eligibility for good time credit violates the Ex Post Facto Clause); State ex rel. Bickman v. Dees, 367 So.2d 283, 289 (La.1978) (retroactive application of change in formula for computing good time credits and reducing the prate of accrual violated the Ex Post Facto Clause); State v. Curtis, 363 So.2d 1375, 1378-83 (La.1978). The lower courts erred in failing to follow this jurisprudence.
Although the United States Supreme Court, in Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), tightened the focus of the ex post facto inquiry, neither Collins nor its progeny has called into question the conclusion reached in Weaver v. Graham that retroactive application of a law reducing the number of good time credits an inmate is eligible to receive violates the Ex Post Facto Clause. Weaver, 450 U.S. at 35-36, 101 S.Ct. at 968. While prior to Collins, the ex post facto inquiry centered on whether retroactive application of a -law “disadvantaged the offender affected by it,” the Collins Court refined this analysis, focusing on two important brands of “disadvantage.” As the post-Collins Supreme Court explained in Lynce,
To fall within the ex post facto prohibition, a law must be retrospective — that is, “it must apply to events occurring before its enactment” — and it “must disadvantage the offender affected by it,” [Weaver, 450 U.S.] at 29, 101 S.Ct., at 964, by altering the definition of criminal conduct or increasing the punishment for the crime, see Collins v. Youngblood, 497 U.S. 37, 50,110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990).
519 U.S. at 441,117 S.Ct. at 896.
Although the Supreme Court decided Collins decades after Weaver, the Court reexamined Weaver in California Department of Corrections v. Morales, 514 U.S. at 506 n. 3, 115 S.Ct. at 1602, five years after its decision in Collins. Discussing its pre-Collins decisions, the Court noted that several decisions, including Weaver, contained language indicating a law which operates to the “disadvantage” of covered offenders by changing the measure of criminal punishment fell within the ex post facto prohibition. According to the Morales Court, this language was “unnecessary to the results in those cases and is inconsistent with the framework developed in Collins [ ].” Although the Morales Court *786 was clear that the focus of the analysis had narrowed, it was also clear the ^problematic language in Weaver was “unnecessary” to the result in that case. Indeed, nothing in Morales called into question the holding of Weaver “that the Ex Post Facto Clause forbids the States to enhance the measure of punishment by altering the substantive ‘formula’ used to calculate the applicable sentencing range.” Morales, 514 U.S. at 505,115 S.Ct. at 1601.
The United States Supreme Court examined Weaver again in Lynce, another post-Collins decision, addressing whether a law retroactively eliminating for certain classes of offenders overcrowding credits — that is, credits which the Court recognized were similar to the good time credits at issue in Weaver because both credits were dependent on an inmate’s good conduct — violated the Ex Post Facto Clause. 519 U.S. at 441-47, 117 S.Ct. at 896-98. Applying Weaver and Morales, the Court determined the California law did, indeed, run afoul of the ex post facto prohibition. Id. at 519 U.S. at 447, 117 S.Ct. at 898.
The Court of Appeal erred in finding Olivieri supported its decision to deny Massey relief. In State ex rel. Olivieri v. State, this Court made the Louisiana ex post facto prohibition found in Article I, section 28 of the Louisiana Constitution coextensive with the federal prohibition against the enactment of ex post facto laws provided in Article I, section 9 of the United States Constitution. 00-0172 at pp. 15-16, 779 So.2d at 744. Therefore, if federal jurisprudence condemning the retroactive application of a law denying an inmate eligibility for good time credits remained unchanged post-Collins, then Louisiana jurisprudence similarly remained unchanged as well post-Olivieri. Thus, our holdings in Singleton, Bickman, and Curtis similarly support Massey’s position that the Department’s retroactive application of Act 572 violates the Ex Post Facto Clause. Both based on the precedents of this Court and of the United States Supreme Court, as well as on our assessment that the retroactive application of Act 572 increases the measure of punishment for Massey’s crimes, we find Massey’s substantial rights have beenjj^violated by the Department’s application of Act 572 in violation of the Ex Post Facto Clause, and we reverse the Department’s computation of Massey’s time.
Accordingly, we reverse the judgment of the Court of Appeal and remand this case to the Department of Public Safety and Corrections with instructions to recompute Massey’s sentence in accordance with Act 138, the law that was in effect at the time he committed his crimes.
REVERSED AND REMANDED TO THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.
VICTORY, Justice, concurs.
WEIMER, Justice, concurs and assigns reasons.
GUIDRY, Justice, dissents and assigns reasons.

. Massey argues attempted molestation is not an enumerated offense under La.Rev.Stat. § 15:571.3, even as it was enacted in 2006. Because we find the 2006 act does not apply to Massey, we do not reach this issue.

. The record reflects Massey was originally sentenced on March 2, 2007. On appeal, the First Circuit remanded Massey for resentenc-ing which then took place on March 14, 2008.

. As Massey's master prison records and the July 28, 2011 letter he received from the Records Office indicate, Massey’s sentence was computed under Act 572 from the first day of his sentence because he was "convicted on 02/07/07 and offenders were not being sentenced under Act 138 after 8/15/06 (effective date of Act 572).” According to the Records Office, Massey accrued good time credits due to an oversight, as he "should actually be under Act 572F (designated name of the Act by the Department of Corrections) which differs from Act 572 (which allows good time) in that Act 572F does not allow good time.”

. We are unable to determine from the record exactly when Massey should have been released. As we explain infra, see note 3, the Department has computed Massey's good time under some portion of Act 572 throughout his entire incarceration. Prior to revoking entirely his eligibility to earn good time, the Department computed Massey’s good time credits under a portion of Act 572 which allowed him to receive thirty-five days of good time credit for every thirty days of good behavior. If the Department had properly computed his good time credits under Act 138, Massey should have received thirty days of good time credits for every thirty days of good behavior in custody.