# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #057

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **19th day of October, 2016**, are as follows:

**BY CLARK, J.**:

2015-OK-1233    STATE OF LOUISIANA v. SEAN HOLLOWAY (Parish of Lafayette)

Accordingly, we find that Art. 890.1, effective May 17, 2012, applies by its plain language "upon conviction, in sentencing the offender" and therefore that version of the article, rather than the former article pertaining to designation of crimes of violence, applied when Holloway was convicted and sentenced in 2014. Therefore, the ultimate judgment of the court of appeal, which vacated the district court's January 29, 2015 designation of Holloway's conviction as a crime of violence, is affirmed. AFFIRMED.

JOHNSON, C.J., concurs.
CRICHTON, J., additionally concurs with reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-OK-1233

STATE OF LOUISIANA

VERSUS

SEAN HOLLOWAY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF LAFAYETTE

**CLARK, J.**

During the 2012 Regular Session, the sentencing provisions of La. C.Cr.P. art. 890.1, relative to crimes of violence, were replaced with new provisions addressing sentencing. After numerous delays, defendant Sean Holloway was convicted and sentenced in 2014 for an offense committed in 2007. Thus, although the offense occurred in 2007, prior to the legislative changes, the conviction and sentencing occurred following the effective date of those changes. We granted certiorari in this case to determine which version of La.C.Cr.P. art. 890.1 applies to the defendant's sentence – the version in effect at the time of the offense, or the version in effect at the time of sentencing. *State v. Holloway*, 15-1233 (La. 6/3/16), 192 So. 3d 756. Based upon the language of the replacement article, which plainly states that it applies "upon conviction, in sentencing the offender," we find that it is the revised version of La. C.Cr.P. art. 890.1, effective May 17, 2012, that applies to defendant's 2014 conviction and sentence, rather than the former version, in effect at the time of the offense. Therefore, we affirm the decision of the court of appeal which vacated the designation of the defendant's conviction as a crime of violence.

FACTS AND PROCEDURAL HISTORY

On August 10, 2007, Holloway was the driver of a vehicle involved in a collision in which his passenger, Shawn Lancon, was killed. Holloway had a blood alcohol content of 0.051. He was charged by bill of information with vehicular homicide[1] and pleaded guilty on January 30, 2014, over six years after he committed the offense. The district court sentenced him to four years imprisonment at hard labor, three of which were to be served without benefit of parole, probation, or suspension of sentence, and an additional year to be served in home incarceration.

---

[1] In 2007, La.R.S. 14:32.1 defined vehicular homicide as:

> A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists:
>
> (1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662. . . .

La.R.S. 32:662(A) provided at that time:

> (1) Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcoholic beverages the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:
>
> . . .
>
> (b) Except as provided in Subparagraph (d), if the person had a blood alcohol concentration at that time in excess of 0.05 percent but less than 0.08 percent by weight, such fact shall not give rise to any presumption that the person was or was not under the influence of alcoholic beverages, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcoholic beverages.
>
> . . .
>
> (d) If the person was under the age of twenty-one years at the time of the test and had a blood alcohol concentration at that time of 0.02 percent or more by weight, it shall be presumed that the person was under the influence of alcoholic beverages. . . .

Holloway was 19 years old at the time of the offense.

On January 23, 2015, over eight months after Holloway was sentenced, the state filed what it captioned as a motion to clarify sentence. As a clarification, the state asked that the district court designate the offense as a crime of violence pursuant to former La.C.Cr.P. art. 890.1 in effect at the time of the offense in 2007 but repealed and replaced with a new version of the article, effective May 17, 2012, which no longer pertained to the designation of crimes of violence. The district court initially noted that, at the time Holloway was originally sentenced, Art. 890.1 did not authorize the court to make that designation, and further opined that whether the offense is treated by the Department of Public Safety & Corrections as a crime of violence is a matter to be determined by the Department. The state, however, argued that Art. 890.1 in effect at the time of the offense must be applied, and further, in light of *State v. Oliphant*, 12-1176 (La. 3/19/13), 113 So.3d 165, the district court should designate the offense as a crime of violence. The district court ultimately acceded to the state's request, at least to the extent of clarifying that in the district court's view, under *Oliphant*, Holloway committed a crime of violence that would be treated as such as a matter of law without further intervention by the court.

The court of appeal granted writs to vacate the district court's ruling. The court of appeal agreed with the state that Art. 890.1 in effect at the time Holloway committed the offense applied at his sentencing (when it was no longer in effect). However, the court of appeal also found that, because *Oliphant* was decided after the offense was committed, there was no legal basis for the district court to designate the offense as a crime of violence. *State v. Holloway*, 15-0227 (La. App. 3 Cir. 5/28/15) (unpub'd) ("At the time the offense was committed [Art. 890.1] required the trial court to designate whether vehicular homicide was a crime of violence. However, there was no support for such a determination in the law or

3

jurisprudence at that time."). The state filed a writ application seeking a review of the court of appeal's judgment.

## DISCUSSION

We find the court of appeal erred in determining that the version of Art. 890.1 in effect at the time of the offense in 2007 applied at the time of sentencing in 2014 after it had been replaced in 2012.[2] In 2007, Art. 890.1 provided, pertaining to the designation of crimes of violence:

> A. When the court imposes a sentence, the court shall designate whether the crime involved is a crime of violence or an attempted crime of violence as defined or enumerated in R.S. 14:2(B).
>
> B. Notwithstanding any provision of law to the contrary, if a person is convicted of or pleads guilty to a crime of violence as defined or enumerated in R.S. 14:2(B) and is sentenced to imprisonment for a stated number of years or months, the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior unless diminution of sentence is prohibited by R.S. 15:571.3(C) or (D).

1997 La. Acts 697. By the time Holloway was sentenced in 2014, Art. 890.1 had been replaced with the following article, pertaining to the waiver of minimum mandatory sentences:

> A. Notwithstanding any other provision of law to the contrary, if a felony or misdemeanor offense specifies a sentence with a minimum

---

[2] We note that the district court did not, at the time of sentencing, find that the offense committed by Holloway constituted a crime of violence. The district court imposed a sentence within the range provided in the penalty provision. The state did not object to or appeal the sentence and did not seek to appeal it. There is no mechanism provided in the Code of Criminal Procedure by which the state can, more than eight months after a sentence that is legal in all respects is imposed and made executory, return to the district court to seek what is essentially a modification of the sentence. *See* La.C.Cr.P. arts. 881, 881.2, 881.5, 882; *see also State v. Gedric*, 99-1213 (La. App. 1 Cir. 6/3/99), 741 So.2d 849, *writ denied*, *State ex rel. Gedric v. State*, 99-1830, 751 So.2d 239. As a result, the state's motion for clarification, which was in effect a motion to modify a legal sentence, brought after commencement of execution of sentence, should have been denied by the district court. *See Smith v. Cajun Insulation,* 392 So.2d 398, 402 n.2 (La. 1980) ("[C]ourts should look through the caption of pleadings in order to ascertain their substance and to do substantial justice."). The court of appeal's decision to vacate the district court's ruling was, therefore, ultimately correct. However, the court's stated reason for vacating that ruling – its finding that the version of La. C.Cr.P. art. 890.1 in effect at the time of the offense applied, rather the version in effect at the time of sentencing, was the finding which prompted this court's grant of certiorari, and which necessitated the following discussion and clarification of the applicable law.

4

term of confinement or a minimum fine, or that the sentence shall be served without benefit of parole, probation, or suspension of sentence, the court, upon conviction, in sentencing the offender shall impose the sentence as provided in the penalty provisions for that offense, unless one of the following occurs:

(1) The defendant pled guilty pursuant to a negotiated plea agreement with the prosecution and the court, which specifies that the sentence shall be served with benefit of parole, probation, or suspension of sentence or specifies a reduced fine or term of confinement.

(2) In cases resulting in trial, the prosecution, the defendant, and the court entered into a post-conviction agreement, which specifies that the sentence shall be served with benefit of parole, probation, or suspension of sentence or specifies a reduced fine or term of confinement.

B. If such agreements are entered into between the prosecution and the defendant, the court, at sentencing, shall not impose a lesser term of imprisonment, lesser fine, or lesser period of sentence served without benefit of parole, probation, or suspension of sentence than that expressly provided for under the terms of the plea or post-conviction agreement.

C. No plea or post-conviction agreement shall provide parole eligibility at a time earlier than that provided in R.S. 15:574.4.

D. Nothing in this Article shall apply to a crime of violence as defined in R.S. 14:2(B) or a sex offense as defined in R.S. 15:541.

E. At the time the sentence is imposed pursuant to this Article, the Uniform Commitment Sentencing Order shall specify that the sentence is imposed pursuant to the provisions of this Article.

2012 La. Acts 160 (eff. May 17, 2012). After May 17, 2012, although La.R.S. 14:2(B) still provided a general definition of "crime of violence," no provision of law directed the district courts to designate offenses as crimes of violence at sentencing.[3]

---

[3] La.R.S. 14:2(B) defines a crime of violence as "an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon." That provision also enumerates several crimes of violence. This court previously noted in *State v. Allen*, 99-2898 (La. 6/16/00), 762 So.2d 615 (per curiam), for those crimes of violence specifically enumerated in R.S. 14:2(B), the Department of Public Safety & Corrections would compute a prisoner's eligibility for parole or good time release at 85% of the full term date without regard to whether the trial court designated the offense as a crime of violence. With respect to those crimes not enumerated in

This Court has generally held that the law in effect at the time of the offense dictates the penalty a defendant faces at time of his conviction. *See, e.g.*, *State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518; *State v. Wright*, 384 So. 2d 399 (La. 1980). Applying the version of the law in effect on the date of the commission of the offense ordinarily avoids violating ex post facto prohibitions in the federal and state constitutions. Both the state and the court of appeal cite *Massey v. Louisiana Dept. of Public Safety & Corrections*, 13-2789 (La. 10/15/14), 149 So.3d 780, to support the view that the trial court should have applied the version of Art. 890.1 in effect at the time of the offense.

However, *Massey* differed in a key regard. Namely, it involved a 2006 amendment to La.R.S. 15:571.3 that "significantly narrowed the class of inmates qualified to receive good time credits," i.e. credits earned from good behavior,

---

R.S. 14:2(B) but otherwise falling under the general definition of a crime of violence, however, the Department would defer to the trial court. Thus, "[i]n such a case, the [Department] properly does not make the legal determination of whether the crime falls under the statutory definition of crime of violence, because the [Department] is without authority to determine which unenumerated crimes are crimes of violence. The [Department] depends upon the designation that Article 890.1A requires the trial judge to make." *Allen*, 99-2898 at 2–3, 762 at 616–17. The effect of the 2012 replacement of former Art. 890.1 on this system of enumerated and unenumerated crimes of violence was unknown, and the issue was never presented to this court for consideration.

In the recent regular legislative session, the legislature reestablished the requirement that district courts designate crimes of violence, albeit in a substantially altered form. New Article 890.3 authorizes the district courts to designate crimes of violence in the minutes. However, the court *may* (not shall) do so, upon written recommendation of the district attorney, *when the offense is defined or enumerated as a crime of violence in R.S. 14:2(B)*, and only for the following limited purposes:

> (1) To determine a defendant's eligibility for suspension or deferral of sentence pursuant to Code of Criminal Procedure Article 893.

> (2) To determine a defendant's eligibility for participation in a drug division probation program pursuant to R.S. 13:5304.

La.C.Cr.P. art. 890.3(A). In addition, under the new article, the court *shall* designate certain *enumerated offenses* as violent crimes. See La.C.Cr.P. art. 890.3(B). However, this violent crime designation, which contains no limitation on purpose, has been unwed from the entire enumerated list of offenses in 14:2(B) and instead now applies to a narrower list of enumerated offenses. At present, this latter directive applies to 27 of the 46 crimes of violence enumerated in La.R.S. 14:2(B).

work, and self-improvement activities which accrued toward an inmate's early release. *Massey*, 13-2798, p. 1, 149 So.3d at 781. Massey committed his offenses in 1994. His victims, however, did not report his crimes until 2004, and a jury did not convict him until 2007. In 2011, he was informed by the Department that he had accrued good time credits through an oversight. "Because the rescission of good time eligibility creates a significant risk of prolonging his incarceration and increases the severity of Massey's sentence by altering the terms and conditions under which he must serve his penalty," this court found that the "application of the amended law would violate the ex post facto clauses of the United States and Louisiana Constitutions." *Id.* Thus, "[a]pplying the law in effect at the time the offenses were committed," the court found "Massey is eligible to receive good time credits and is entitled to have his time recomputed under the statute before it was amended." *Id.*, 13-2789, p. 1, 149 So.3d at 781–82.

Conversely, in this matter, applying Art. 890.1 in effect at the time of sentencing rather than the article in effect at the time of the offense violates no ex post facto prohibitions. A law which "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed" survives an ex post facto analysis. *Collins v. Youngblood*, 497 U.S. 37, 52, 110 S. Ct. 2715, 2724, 111 L. Ed. 2d 30 (1990). This court similarly observed that the linchpin inquiry in determining whether a statute violates the state Ex Post Facto Clause is "whether the change alters the definition of criminal conduct or increases the penalty." *State ex rel. Olivieri v. State*, 00-0172, p. 15 (La. 2/21/01), 779 So.2d 735, 744. Not applying the prior version of Art. 890.1 does not make the punishment more burdensome here and therefore the Ex Post Facto Clauses of the

7

state and federal constitutions are not implicated. Instead, the application of the newer article could potentially result in defendant being eligible for parole earlier, and in that regard the 2012 replacement of Art. 890.1 could be characterized as an ameliorative change to the law.

This Court examined the application of ameliorative statutory amendments in *State v. Mayeaux*, 01-3195 (La. 6/21/02), 820 So.2d 526, where "the amended version of La. R.S. 14:983 . . . [retained] the sentencing ranges provided for third and fourth DWI offenders, [but] radically changed the way in which the offender serves the sentence imposed by the court." *Id.*, 01-3195, pp. 3–4, 820 So.2d at 528. In that case, as is the case here, the statute was amended between the date of the offense and the defendant's conviction and sentencing. This Court found that the ameliorative change to La.R.S. 14:98 applied at sentencing for three reasons:

> First, the statute plainly states that "upon conviction," and not "upon committing the offense," the defendant shall be sentenced to a specific term. Thus, the specific language in LSA–R.S. 14:98 provides the time at which the penalty provisions are applicable.
>
> Second, as previously noted, the amended version of the statute contains a specific statement of legislative purpose, as follows:
>
> > The legislature hereby finds and declares that conviction of a third or subsequent DWI offense is presumptive evidence of the existence of a substance abuse disorder in the offender posing a serious threat to the health and safety of the public. Further the legislature finds that there are successful treatment methods available for treatment of addictive disorders.
>
> LSA–R.S. 14:98(G). Thus, the legislature has clearly stated its intention to embrace treatment measures in preference to incarceration. Applying the more lenient sentencing requirements of the amended statute to someone convicted after the enactment of the legislation, despite the commission of the offense prior to the enactment, would further this legislatively stated purpose. This clearly stated legislative purpose is one which this court cannot ignore.
>
> Finally, language in the amending legislation grants potential relief to those already convicted by providing that "[n]othing contained in this Act shall be construed to limit the authority of the Department of

8

> Public Safety and Corrections in recommending those persons incarcerated on or before August 15, 2001, to participate in home incarceration in accordance with Code of Criminal Procedure Article 894.2." 2001 La. Acts No. 1163, § 4. It would be incongruous to extend the opportunity for home incarceration, and treatment, to those already convicted but to withhold that opportunity from those who were charged but not convicted prior to August 15, 2001, the effective date of the amendments.

*Mayeux*, 01-3195, pp. 5–6, 820 So.2d at 529–30.

Similarly, in this case, Art. 890.1 as amended in 2012 expressly applied "upon conviction, in sentencing the offender." In *State v. Kondylis*, 14-0196 (La. 10/3/14), 149 So. 3d 1210, this court remanded to the district court to determine whether the parties correctly followed the prescriptions of the 2012 version of Art. 890.1 when departing from the mandatory minimum sentence. *Kondylis* involved an offense (distribution of cocaine) that preceded the 2012 enactment and a conviction and sentencing date after the new Art. 890.1 became effective. Implicit in that order is the finding that the relevant date for purposes of the application of Art. 890.1 as amended in 2012 is the date of conviction rather than the date of the offense.

Although the legislature has not articulated a strong policy statement in the text of the statute, as was the case in *Mayeux*, there is an indication the legislature did not intend for an offender like Holloway to be treated as having committed a crime of violence. Following the *Oliphant* decision, and eight days after Holloway was sentenced, the legislature amended the enumerated list of offenses in La.R.S. 14:2(B) to include vehicular homicide, but only when "the operator's BAC exceeds 0.20 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood." La.R.S. 14:2(B)(46). As noted above, Holloway registered a BAC of 0.051 percent.

9

Finally, although the state contends the district court was authorized to designate the offense a crime of violence under former Art. 890.1, it should be emphasized that the district court has now twice declined to do so. The district court did not designate the offense a crime of violence when Holloway was sentenced (see n.2). Furthermore, a fair reading of the transcript of the hearing held in response to the state's motion to clarify the sentence indicates that the court still did not make that determination. Instead, the district court simply opined that under *Oliphant* the offense would automatically be treated as such.

Therefore, while the court of appeal correctly vacated the district court's ruling insofar as it suggested that the law would automatically treat defendant's offense as a crime of violence, it erred in doing so on grounds that the version of Art. 890.1 in effect at the time of the offense, rather than the version of Art. 890.1 in effect at the time of sentencing, applied.

**DECREE**

Accordingly, we find that Art. 890.1, effective May 17, 2012, applies by its plain language "upon conviction, in sentencing the offender" and therefore that version of the article, rather than the former article pertaining to designation of crimes of violence, applied when Holloway was convicted and sentenced in 2014. Therefore, the ultimate judgment of the court of appeal, which vacated the district court's January 29, 2015 designation of Holloway's conviction as a crime of violence, is affirmed.

**AFFIRMED**

SUPREME COURT OF LOUISIANA

No. 2015-OK-1233

STATE OF LOUISIANA

VERSUS

SEAN HOLLOWAY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF LAFAYETTE

JOHNSON, C.J., concurs.

SUPREME COURT OF LOUISIANA

No. 2015-OK-1233

STATE OF LOUISIANA

VERSUS

SEAN HOLLOWAY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF LAFAYETTE

**CRICHTON, J., additionally concurs and assigns reasons.** I agree with the majority that the version of La. C.Cr.P. art. 890.1 in effect at the time of sentencing applies in this case, and the court of appeal erred in finding otherwise. I write separately to address this Court's opinion in *State v. Oliphant*, 12-1176 (La. 3/19/13), 113 So. 3d 165. Specifically, I agree with the court of appeal insofar as it ruled that *Oliphant* itself should not be applied retroactively, to the extent that *Oliphant*'s ruling could be interpreted as re-categorizing vehicular homicide as a "crime of violence," therefore precluding vehicular homicide offenders from being treated under the less onerous good time and parole provisions of R.S. 15:571.3 or R.S. 15:574.4. To apply this jurisprudential designation retroactively would, in my view, violate the state and federal Ex Post Facto Clauses. *See* U.S. Const. art. I, § 9-10 and La. Const. art. I, § 2