# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2021 CA 0132

### JENNIFER ENGLADE

### VERSUS

### LOUISIANA DEPARTMENT OF CORRECTIONS

Judgment Rendered:    DEC 3 0 2021

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 672,142, Section 26

Honorable Richard "Chip" Moore, Judge Presiding

* * * * * *

Jennifer Englade
Louisiana Correctional
Institute for Women
St. Gabriel, Louisiana

Plaintiff/Appellee
In Proper Person

Debra A. Rutledge
Deputy General Counsel
Baton Rouge, LA

Counsel for Defendant/Appellant
Department of Public Safety &
Corrections

* * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

**McCLENDON, J.**

The Louisiana Department of Public Safety and Corrections (the Department) classified the defendant's vehicular homicide offenses as crimes of violence for purposes of good time eligibility. The defendant challenged the Department's classification in Administrative Remedy Procedure No. LCIW-2018-020. The trial court reversed the Department's classification, ordered the Department to calculate the defendant's sentences as non-violent offenses for purposes of good time eligibility, and further ordered the Department to pay court costs to the defendant. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Jennifer Englade is an offender in the legal custody of the Department. On May 26, 2013, Englade committed three counts of vehicular homicide, one count of third degree feticide, and one count of first degree vehicular negligent injuring. Englade entered a guilty plea as to all charges on September 2, 2014. On September 25, 2014, she was sentenced to thirty years at hard labor as to the three counts of vehicular homicide, with five years to be served without the benefit of probation, parole, or suspension of sentence; five years at hard labor as to the count of third degree feticide; and five years at hard labor as to the count of first degree vehicular negligent injuring. The trial court ordered all sentences to run concurrently.[1]

The Department classified Englade's vehicular homicide offenses as crimes of violence. Accordingly, the Department calculated her "good time" at the reduced rate applicable to offenders convicted of violent crimes. Englade challenged the Department's classification of her offenses as crimes of violence in Administrative Remedy Procedure (ARP) No. LCIW-2018-020. The Department denied Englade's request for relief at the first and second steps on the basis that "The Louisiana Supreme Court in [**State v. Oliphant**, 2012-1176 (La. 3/19/13), 113 So.3d 165] declared Vehicular Homicide as a crime of violence."

---

[1] The trial court also recommended that Englade receive substance abuse treatment while incarcerated pursuant to the vehicular homicide statute mandate.

Subsequently, Englade filed a petition for judicial review of the Department's final decision under the Louisiana Corrections Administrative Remedy Procedure Act (CARP), LSA-R.S. 15:1171, *et seq.* Englade argued that under LSA-R.S. 14:32.1, vehicular homicide is only a crime of violence when the offender's BAC at the time of the offense exceeds 0.20%, and her BAC was 0.15%. Englade concluded that the Department erred in classifying her convictions as crimes of violence for purposes of calculating her good time eligibility.

The Commissioner of the Nineteenth Judicial District Court (19th JDC) issued a report recommending the reversal of the Department's decision and the grant of Englade's request for relief. The trial court executed a judgment on November 23, 2020, adopting the Commissioner's report as its reasons and reversing the Department's decision. The November 23, 2020 judgment ordered the Department to calculate Englade's vehicular homicide sentences as non-violent offenses for purposes of good time eligibility and to pay court costs to Englade. From this judgment, the Department appeals.

## RULE TO SHOW CAUSE

On April 27, 2021, this Court issued a Rule to Show Cause Order, *ex proprio motu*, as to why this appeal should not be dismissed, because the November 23, 2020 judgment contains the typewritten name of one judge, but the signature of another. Citing LSA-C.C.P. art. 1911, this Court ordered the parties to show cause by briefs whether the appeal should or should not be dismissed. The Rule to Show Cause Order was referred to the panel to which this appeal is assigned. Accordingly, we address it herein.

An appellate court cannot determine the merits of an appeal unless appellate jurisdiction is properly invoked by a valid final judgment. **Matter of Succession of Weber**, 2018-1337 (La.App. 1 Cir. 4/29/19), 276 So.3d 1021, 1026. For a judgment to be a final judgment, it must contain appropriate decretal language naming the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. **Simon v. Ferguson**, 2018-0826 (La.App. 1 Cir. 2/28/19), 274 So.3d 10, 13-14. In this matter, the November 23, 2020 judgment contains appropriate decretal language, as it identifies Englade as the party in favor of whom the ruling is ordered, the Department as the party against whom the ruling is ordered, and

3

the classification of Englade's vehicular homicide convictions as non-violent offenses as the relief that was granted.

However, in addition to the requirement that a final judgment contain appropriate decretal language, Article 1911(A) states, in pertinent part:

> Except as otherwise provided by law, every final judgment shall contain the typewritten or printed name of the judge and be signed by the judge. Any judgment that does not contain the typewritten or printed name of the judge shall not be invalidated for that reason.

The Article 1911(A) requirement that a final judgment be signed "by the judge" has been interpreted to mean that the judge before whom the case was tried must sign the judgment. **In re M.L.M.**, 2019-1030 (La.App. 1 Cir. 4/23/20), 300 So.3d 902, 905. A judgment signed by a judge, other than the judge who presided over the hearing, is invalid and fatally defective. Such a judgment does not constitute a final judgment over which this Court can exercise appellate jurisdiction. **Id.**, 300 So.3d at 905-906.

As noted above, the November 23, 2020 judgment at issue in this matter contains the typewritten name of one judge – specifically, Judge Richard "Chip" Moore – but was signed by another – Judge Nadine M. Ramsey. Thus, it is not clear from the face of the judgment whether the judge before whom the case was tried was the same judge who signed the judgment. The Department's brief in response to the Rule to Show Cause explained that Judge Moore was hospitalized as a result of COVID-19 on or about July 3, 2020, and remained out of the office until January 2021. Consequently, the supreme court issued an order assigning Retired Judge Nadine M. Ramsey as judge *pro tempore*,[2] effective November 4, 2020, through November 30, 2020, and "subject to the completion of any unfinished business."

Once properly appointed, an *ad hoc* or *pro tempore* judge is vested with the same powers and authority as the elected judges of the same court. **Strahan**, 916 So.2d at 211; see, e.g., **Doiron v. S. Silica of Louisiana**, 613 So.2d 1064, 1066 (La.App. 3 Cir. 2/3/1993), writ denied, 619 So.2d 546 (La. 1993). In this matter, Judge Ramsey's *pro tempore* appointment began on November 4, 2020. Thus, Judge Ramsey had full

---

[2] Pursuant to Article V, § 5A of the Louisiana Constitution, the supreme court has explicit and unfettered power to assign a sitting or retired judge to assist courts in furtherance of the administration of justice. **State v. Strahan**, 2004-1971 (La.App. 1 Cir. 5/6/05), 916 So.2d 209, 211.

authority to preside over the adjudication of Englade's petition for judicial review and to execute the November 23, 2020 judgment at issue. See **Prejean v. McMillan,** 2018-0919 (La.App. 1 Cir. 2/28/19), 274 So.3d 575, 577 n.4, and **Strahan,** 916 So.2d at 211; see also LSA-R.S. 13:4209. Moreover, under LSA-R.S. 15:1177(A)(5), Englade's petition for review was mandated to "be conducted by the court without a jury and shall be confined to the record," and the November 23, 2020 judgment specifically states that Judge Ramsey conducted a careful *de novo* review of the entire record before adopting the Commissioner's Report as reasons and executing the judgment. Thus, the record reflects that Judge Ramsey was both the judge before whom the matter was tried and the judge who executed the judgment at issue.

Regarding the Article 1911 requirement that a final judgment contain the typewritten or printed name of the judge, we note that this Court recently stated:

> The plain language of La. C.C.P. art. 1911(A) thus requires the inclusion of the typewritten or printed name of the judge in a final judgment, and simultaneously precludes invalidation of the judgment on the basis that the typewritten or printed name of the judge is absent.

**Chandler v. Cajun Ready Mix Concrete,** 2019-1650 (La.App. 1 Cir. 7/7/21), --- So.3d ----, ---, 2021 WL 2821079, at *3. In **Chandler,** this Court considered a judgment on appeal that contained decretal language but did not contain the typewritten or printed name of the trial court judge. Finding that the absence of the trial court judge's typewritten or printed name alone did not invalidate the judgment, we maintained the appeal. **Id.**

As discussed above, the November 23, 2020 judgment at issue contains appropriate decretal language and was properly signed by the judge before whom the matter was tried as required by Article 1911. Having found in **Chandler** that the complete absence of the signatory judge's typewritten or printed name did not invalidate an otherwise valid final judgment, we reason by analogy that under these circumstances, wherein it is plain and undisputed that the signatory judge was the same judge who presided over the trial of the matter while serving *pro tempore* for the judge whose typewritten name was included, the presence of the typewritten name of a judge other

5

than the signatory judge does not invalidate an otherwise valid final judgment. See **Id.** Accordingly, we maintain the appeal.

## STANDARD OF REVIEW

Enacted in 1985, CARP authorized the Department to adopt and implement an administrative remedy procedure for receiving, hearing, and disposing of any and all inmate complaints and grievances. LSA-R.S. 15:1171-72; **Pope v. State**, 99-2559 (La. 6/29/01), 792 So.2d 713, 715. As provided in CARP, an offender aggrieved by an adverse decision rendered pursuant to any administrative remedy procedure can institute proceedings for judicial review by filing a petition for judicial review in the 19th JDC. LSA-R.S. 15:1177. The office of Commissioner of the 19th JDC was created by LSA-R.S. 13:711 to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. The Commissioner's written findings and recommendations are submitted to the trial court judge, who may accept, reject, or modify them. LSA-R.S. 13:713(C)(5); **Strattman v. LeBlanc**, 2019-0105 (La.App. 1 Cir. 9/27/19), 289 So.3d 135, 138 n.1, writ denied, 2019-01904 (La. 6/12/20), 307 So.3d 1033.

On review of the Department's decision, the trial court functions as an appellate court. Its review shall be confined to the record and shall be limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level. LSA-R.S. 15:1177(A)(5); **Gilmer v. Louisiana Dep't of Pub. Safety & Corr.**, 2015-0134 (La.App. 1 Cir. 9/18/15), 181 So.3d 746, 748.

On review of the trial court's judgment under LSA-R.S. 15:1177, this Court owes no deference to the factual findings or legal conclusions of the trial court, just as the Louisiana Supreme Court owes no deference to factual findings or legal conclusions of this Court. **Owens v. Stalder,** 2006-1120 (La.App. 1 Cir. 6/8/07), 965 So.2d 886, 888.

## DISCUSSION

The sole issue in this appeal is whether the Department properly classified Englade's convictions of vehicular homicide as crimes of violence, for purposes of calculating her good time eligibility. Diminution of sentence for good behavior, as provided for in LSA-R.S. 15:571.3, is commonly referred to as "good time." **Williams v.**

6

**Creed**, 2007-0614 (La.App. 1 Cir. 12/21/07), 978 So.2d 419, 421, n. 1, <u>writ denied sub</u> <u>nom.</u>, **State ex rel. Williams v. State**, 2008-0433 (La. 10/2/09), 18 So.3d 111. Offenders are generally entitled to earn good time credit to be applied toward diminution of their sentences; however, offender[s] convicted of a crime of violence as defined by LSA-R.S. 14:2(B) are required to serve at least 85% of their sentences before release.[3] **Branch v. Louisiana Dep't of Pub. Safety & Corr.**, 2018-1303 (La.App. 1 Cir. 8/8/19), 2019 WL 3757592, at **2-3 (unpublished). Louisiana Revised Statutes 14:2(B) sets forth both a general definition of the term "crime of violence," and a list of crimes that are explicitly included and identified as crimes of violence. When a particular crime is not enumerated as a crime of violence in LSA-R.S. 14:2(B), the question remains as to whether it is defined as such. See **Washington v. State**, 2019-01792 (La. 1/27/21), 315 So.3d 198, 200 (per curiam).

Generally, the law in effect at the time of the commission of the offense determines the penalty that the convicted accused must suffer. **Massey v. Louisiana Dept. of Public Safety & Corrections**, 2013-2789 (La. 10/15/14), 149 So.3d 780, 783. Vehicular homicide was not an enumerated crime of violence at the time of Englade's offenses, committed on May 26, 2013. However, prior to Englade's offenses, the Louisiana Supreme Court in **Oliphant**, 113 So.3d at 174, found that the offense of vehicular homicide qualified as a crime of violence. Thus, the Department classified Englade's convictions as crimes of violence based on **Oliphant**.

Subsequently, by virtue of Act 280, § 1 of the 2014 Regular Legislative Session, the legislature enacted LSA-R.S. 14:2(B)(46), effective May 28, 2014, which specifically enumerated vehicular homicide as a crime of violence "when the operator's blood alcohol concentration exceeds 0.20 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood." With regard to the statute defining the crime of vehicular homicide, Act 280, § 1 also enacted LSA-R.S. 14:32.1(C), which now provides:

> C. Whoever commits the crime of vehicular homicide shall be sentenced as
> an offender convicted of a crime of violence if the offender's blood alcohol

---

[3] We note that LSA-R.S. 15:571.3(B)(2) creates exceptions to this general rule. However, pursuant to LSA-R.S. 15:571.3(B)(2)(c), these exceptions apply only to offenders who commit an offense or whose probation or parole is revoked on or after November 1, 2017. Englade's offenses were committed on May 26, 2013.

concentration, at the time of the offense, exceeds 0.20 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood.

Because Act 280 became effective on May 28, 2014, it was in effect at the time Englade pled guilty and was sentenced.

This Court recently considered a case in the same procedural posture and presenting similar facts. In **Duhon v. Louisiana Department of Public Safety and Corrections**, 2021-0140 (La.App. 1 Cir. 10/13/21), 2021 WL 4771703 (unpublished), the petitioner committed the offense of vehicular homicide on April 24, 2014, after the **Oliphant** decision, but before Act 280 became effective on May 28, 2014. The petitioner pled guilty and was sentenced on August 21, 2015, after Act 280 amended LSA-R.S. 14:2(B) to include vehicular homicide as an enumerated crime of violence when the offender's BAC exceeds 0.20 percent. The Department classified Duhon's conviction as a crime of violence for purposes of calculating good time eligibility pursuant to **Oliphant**, 113 So.3d 165. Duhon challenged the Department's classification in her ARP, and when the Department denied Duhon's request for relief at the first and second steps, Duhon filed a petition for judicial review. The Commissioner of 19th JDC issued a report recommending the reversal of the Department's decision, and the trial court reversed the Department.

On appeal, our colleagues in **Duhon** relied heavily on the supreme court's decision in **State v. Holloway**, 2015-1233 (La. 10/19/16), 217 So.3d 343. In **Holloway**, the defendant was sentenced in 2014 for a vehicular homicide committed in 2007, when he had a BAC of 0.051%. The Supreme Court wrote:

> Although the legislature has not articulated a strong policy statement in the text of the statute... there is an indication the legislature did not intend for an offender like Holloway to be treated as having committed a crime of violence. Following the *Oliphant* decision, and eight days after Holloway was sentenced, the legislature amended the enumerated list of offenses in La.R.S. 14:2(B) to include vehicular homicide, but only when "the operator's BAC exceeds 0.20 percent by weight based on grams of alcohol per one hundred cubic centimeters of blood." La.R.S. 14:2(B)(46). As noted above, Holloway registered a BAC of 0.051 percent.

**Holloway**, 217 So.3d at 349. Relying upon this language, the **Duhon** Court concluded:

> Based on its interpretation of legislative intent, the [s]upreme [c]ourt indicated the vehicular homicide in *Holloway* should not be classified as a crime of violence under *Oliphant* even though the offender committed the offense in 2007, [pled] guilty in January 2014, and was sentenced eight

8

days *before* the effective date of the amendment to La. R.S. 14:2(B), which placed a limit on those vehicular homicides that could be classified as violent offenses.

We believe the same rationale for retroactively applying the amendments to La. R.S. 14:2(B) and 14:32.1 is applicable in the instant case, particularly since the petitioner's conviction and sentencing occurred *after* the effective date of the amendments. Under the amended versions of La. R.S. 14:2(B) and 14:32.1, petitioner's vehicular homicide conviction could be classified as a violent offense only if her BAC exceeded 0.20 percent. Moreover, there is no *ex post facto* violation because application of the amendments to petitioner's conviction for an offense committed prior to the effective date of the amendments will have an ameliorative effect and does not increase the penalty she was exposed to. An examination of the record reveals that the State did not make any allegation or present any evidence concerning petitioner's BAC at the time of the offense, either in the bill of information or at the ***Boykin*** hearing where she pled guilty. Accordingly, there is no basis to classify petitioner's vehicular homicide conviction as a crime of violence[.]

**Duhon**, 2021 WL 4771703, at *2, internal citations omitted.

While we note that the language of the statutes does not specifically state that vehicular homicide is a crime of violence "only" when the offender's BAC exceeds 0.20 percent at the time of the offense, this Court in applying **Holloway** has so held.[4] Further, the facts of the matter before us are essentially indistinguishable from the facts presented in **Duhon**. Here, as in **Duhon**, Englade committed her offenses after **Oliphant** and before the effective date of Act 280, but pled guilty and was sentenced after Act 280 amended LSA-R.S. 14:2(B) and 14:32.1 to include vehicular homicide as an enumerated crime of violence when the offender's BAC exceeds 0.20 percent. Likewise, as in **Duhon**, our examination of the record reveals that the State did not make any allegation or present any evidence concerning Englade's BAC at the time of the offense.[5] Thus, applying the reasoning of **Duhon** to the case before us, we find that there is no basis to classify Englade's vehicular homicide convictions as crimes of violence.

### DECREE

For these reasons, the November 23, 2020 judgment in favor of petitioner, Jennifer Englade, ordering defendant, the Louisiana Department of Public Safety and Corrections,

---

[4] Louisiana Revised Statutes 14:2(B) sets forth both a general definition of the term "crime of violence," and a list of crimes that are explicitly included and identified as crimes of violence. It is well-settled that the list of specifically enumerated crimes of violence set forth in LSA-R.S. 14:2(B) is not exhaustive, but is merely illustrative. Thus, unlisted offenses may be denominated as crimes of violence under the general definition of the term provided by the statute. See **Washington**, 315 So.3d at 200.

[5] Englade concedes that her BAC was 0.15%, and the State does not contest this. However, the record before us does not contain anything that either verifies or challenges this.

to calculate petitioner's vehicular homicide convictions as non-violent offenses for purposes of good time eligibility, and ordering the Department to pay court costs, is hereby affirmed. All costs of this appeal, in the amount of $1,106.50, are assessed to the defendant, the Louisiana Department of Public Safety and Corrections.

**AFFIRMED.**